# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-2386

Dwayne A. Moore, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided     May 15, 2007   )

*Alan T. Fenley*, of Schenectady, New York, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel, and *Debra L. Bernal*, all of Washington, D.C., for the appellee.

Before KASOLD, LANCE, and DAVIS, *Judges*.

LANCE, *Judge*, filed the opinion of the Court.  KASOLD, *Judge*, filed a dissenting opinion.

LANCE, *Judge*: The appellant, Dwayne A. Moore, appeals through counsel an August 16, 2004, decision of the Board of Veterans' Appeals (Board) that denied a disability rating for atypical affective disorder greater than 10% from September 16, 1992, to January 26, 1997; denied a disability rating greater than 30% from January 27, 1997, to August 7, 2002; and denied a disability rating greater than 50% since August 8, 2002.  Record (R.) at 1-25.  For the reasons that follow, the Court will affirm the August 2004 Board decision.

## I.  FACTS

The appellant served on active duty in the U.S. Army from 1988 to 1991.  R. at 27-28.  While on active duty, he was hospitalized in January 1991 as a result of a personality disorder and eventually discharged.  R. at 95-96.  In September 1992, he applied for service connection and

benefits for a personality disorder. R. at 104-07. A VA regional office denied service connection in a January 1993 rating decision. R. at 117-18. After an extended procedural history, in July 1999 he was granted service connection for an atypical affective disorder (R. at 251-58) and, in August 1999, was assigned a 10% disability rating, effective September 16, 1992 (R. at 260-62). He appealed the initially assigned disability rating, and was granted a 30% disability rating through an October 2002 Supplemental Statement of the Case, effective August 8, 2002. R. at 322-31. In August 2004, the Board issued a decision increasing his disability rating to 30% from January 27, 1997, to August 7, 2002, and to 50% from August 8, 2002, forward. R. at 1-23. This appeal follows, challenging the denial of an initial disability rating for atypical affective disorder in excess of 10% from September 16, 1992, to January 26, 1997; the denial of a disability rating in excess of 30% from January 27, 1997, to August 7, 2002; and the denial of a disability rating in excess of 50% from August 8, 2002.

## II. ANALYSIS

### A. Medical Records

The appellant asserts that VA erred by failing to obtain service medical records (SMRs) from the "Tripoli [sic] Army Hospital," where he was treated in January 1991 for a psychiatric condition while on active duty. Appellant's Brief (Br.) at 8-11 (referring to Tripler Army Hospital in Honolulu, Hawaii, *see infra*). Pursuant to 38 U.S.C. § 5103A(a)(1), "[t]he Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." The duty to assist is not unlimited and the statute permits the Secretary to assert that he has been absolved from the duty because further efforts would be futile: "The Secretary is not required to provide assistance to a claimant under this section if no reasonable possibility exists that such assistance would aid in substantiating the claim." 38 U.S.C. § 5103A(a)(2). However, in this case the Secretary does not contest that the duty to assist does apply and that he is obligated to obtain all relevant records identified by the appellant.

The duty-to-assist statute has specific provisions governing records such as the SMRs that the appellant suggests exist but were not obtained. In general, "[a]s part of the assistance provided under subsection (a), the Secretary shall make reasonable efforts to obtain relevant records (including

2

private records) that the claimant adequately identifies to the Secretary and authorizes the Secretary to obtain." 38 U.S.C. § 5103A(b)(1); *see Loving v. Nicholson*, 19 Vet.App. 96, 102 (2005). As to claims for disability compensation, the statue is specific:

> In the case of a claim for disability compensation, the assistance provided by the Secretary under subsection (b) shall include obtaining the following records *if relevant* to the claim:
>
>> (1) The claimant's service medical records and, if the claimant has furnished the Secretary information sufficient to locate such records, other relevant records pertaining to the claimant's active military, naval, or air service that are held or maintained by a governmental entity.

38 U.S.C. § 5103A(c), (c)(1) (emphasis added).

In his brief, the Secretary asserts that the particular SMRs at issue do not fall within his duty to assist because they are not relevant to the disputed disability rating. Specifically, the Secretary argues that "the fact that [the a]ppellant had an in-service psychiatric condition is not in dispute." Secretary's Br. at 15-16. Accordingly, he argues that the SMRs "cannot shed light on [the disability rating] because they only show that he had an in-service condition–a point that has already been acknowledged by VA." Secretary's Br. at 16. Hence, the dispute between the parties is whether, based on the facts of this case, the SMRs in contention would be relevant to the appellant's claim.

The SMRs that the appellant alleges, for the first time on appeal to this Court (Br. at 8), should have been obtained are referred to an SMR in the record. The record before the Court contains a January 14, 1991, "Chronological Record of Medical Treatment" from the Naval Medical Clinic at Pearl Harbor, Hawaii. R. at 95. In that record, Staff Psychiatrist Cdr. T.A. Bischoff stated that the appellant "was originally evaluated by me on 3 Jan. '91 after he was hospitalized on the psychiatric ward at Tripler (29 Dec. - 3 Jan.)." *Id.* After describing the appellant's symptoms and treatment, Cdr. Bischoff diagnosed the appellant as having, inter alia, a "dependant personality disorder" and recommended that the appellant be separated from service. R. at 95-96. Moreover, evidence contemporaneous with his hospitalization at Tripler and discharge from service notes that he experienced a psychological episode in December 1990 triggering his February 1991 separation from service. The December 1992 VA medical examination recognized that the appellant "was released in February 1991, as part of an R4, or General Medical Discharge, for personality disorder."

3

R. at 112. In addition, the August 1999 rating decision stated that "in December 1990 [the appellant] was reported to have gone 'berserk' and to have made superficial lacerations to his wrists." R. at 260. In his brief, the appellant argues that his condition has been the subject of "inconsistent diagnoses" and that "evidence in the records of the veteran's treatment at Tripoli [sic] Army Hospital, could well contribute to a more complete picture of the circumstances surrounding the origin of [the veteran]'s disability." Appellant's Br. at 10.

In general, the appellant bears the burden of persuading the Court that the Board decision below is tainted by a prejudicial error that warrants reversing or remanding the matter for the investment of the additional time and effort that would be required by VA to produce a new decision in his case. *See Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006) ("The appellant carries the burden of persuasion regarding contentions of error."); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that appellant had failed to satisfy burden of demonstrating error in Board decision, and thus affirming).

When an appellant asserts that the Secretary failed to obtain relevant records, the Court looks at the available descriptions of the records to determine whether the appellant has presented a persuasive argument that they may be relevant to the claim. *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992). In this case, it is undisputed that the alleged records are SMRs that would document a psychiatric hospitalization occurring while the appellant was in service. However, as the Secretary points out, the appellant already has been granted service connection for his psychological condition and the only issue on appeal is the appropriate disability rating for the appellant's condition during the period for which it is service-connected.

Even if this were a claim for service connection, the issue of whether the appellant had an in-service disease or injury would be distinct from the issue of whether he had a current disability. *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); *Francisco v. Brown*, 7 Vet.App. 55, 58 (1994) ("Compensation for service-connected injury is limited to those claims which show a present disability."); *Rabideau v. Derwinski*, 2 Vet.App. 141, 143 (1992) (without proof of a present disability, there can be no valid claim). Moreover, as to disability rating, the relevant inquiry pertains to the symptoms that the claimant was experiencing during the period for which he or she

4

seeks compensation. *See Francisco*, 7 Vet.App. at 58 (rejecting appellant's argument that the current disability rating opinion was inadequate because it failed to fully discuss past records).

Here, the appellant appealed an initial claim for a higher disability rating. Such an inquiry must consider a broad range of evidence because staged ratings, or separate ratings for separate periods of time based on the facts found, may be assigned. *See Fenderson v. West*, 12 Vet.App. 119, 126 (1999). An initial rating claim is distinct from an increased-rating claim, which is a new claim. *See Suttman v. Brown*, 5 Vet.App. 127, 136 (1993) (claim for increase "based upon facts different from the prior claim").

Though the Court in *Fenderson* recognized that an initial claim for a higher rating required consideration of the evidence of record spanning a broader period of time than that considered in an increased-rating claim, the present level of disability remains of primary concern in an initial rating claim for a higher disability. While the *Fenderson* Court remanded the matter for VA to consider specific medical evidence dated within two years after the date of the veteran's claim, it is significant that it did not require that VA obtain evidence that predated the date of the claim. *See Fenderson*, 12 Vet.App. at 126-27. In fact, in prior cases, the Court has chastised the Secretary for relying on medical evidence that was not contemporaneous with the time period in dispute. *See Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992) (ruling that it was improper to rate a disability based on evidence that predated the decision by four years).

Accordingly, the Court is not persuaded that the SMRs that the appellant alleges should have been obtained would be relevant to any disputed issue, even if they were obtained. In other words, even if the SMRs were obtained and indicated that the appellant displayed a symptom in service that was not observed in any of the postservice medical examinations, such records would not help his claim. He is simply not entitled to disability compensation for symptoms he experienced in service where those symptoms did not persist into the period for which he has been awarded compensation. The issue on appeal is what level of disability did the appellant experience after September 16, 1992? *See Francisco, supra*. To answer that question, the Board properly obtained and relied upon medical evidence from the period after September 16, 1992.

Even assuming that the SMRs would be relevant to prove that the symptoms noted in service continued to manifest after service, the Court cannot conclude that the failure to obtain those records

was prejudicial to the appellant in this case. *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (appellant has burden alleging prejudice with specificity). "We have also come a long way from the time when all . . . error was presumed prejudicial and reviewing courts were considered citadels of technicality. The harmless-error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984). Moreover, the Court recognizes that the resources of the Secretary are not infinite. *Grivois v. Brown*, 6 Vet.App. 136, 139 (1994).

Accordingly, the duty to assist is not a license for the Court to remand a matter for a fishing expedition. *Cf. Gobber*, 2 Vet.App. at 472 (ruling on the former version of the duty to assist, codified as 38 U.S.C. § 5107 (West 1991)). Here, the Board relied on multiple VA medical examinations conducted during the periods in question as well as treatment records private providers created contemporaneous with treatment. R. at 8-13. Moreover, the record contains a description of the appellant's in-service symptoms and a diagnosis prepared 11 days after the in-service hospitalization by the same physician who treated the appellant during that time. The appellant does not offer a coherent theory of why the alleged SMRs would be meaningfully different from those available or how they could alter the picture created by the copious direct evidence of his postservice symptoms provided by the numerous examinations and treatment records from the periods at issue. All that the appellant states is that his condition has been the subject of "inconsistent diagnoses" and that "evidence in the records of the veteran's treatment at Tripoli [sic] Army Hospital, could well contribute to a more complete picture of the circumstances surrounding the origin of [the appellant]'s disability." Appellant's Br. at 10. This vague assertion is insufficient to carry the appellant's burden. *Locklear v. Nicholson*, 20 Vet.App. 410, 416-17 (2006) (Court unable to find error when arguments are "far too terse to warrant detailed analysis by the Court"); *Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) ("Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments.").

Although our dissenting colleague asserts this decision is contrary to established caselaw, *Fenderson v. West*, 12 Vet.App. 119, 126 (1999), is inapposite. In *Fenderson*, the Court ordered VA to consider medical records from the entire period for which the veteran's condition was eligible for

service connection, back to the date of his discharge, because the initial grant of service connection was on appeal and, therefore, staged ratings may have been appropriate. *Id*. In contrast, although Mr. Moore's claim also involves an initial rating and presents the possibility of staged ratings, those ratings would not extend past the undisputed date the claim was filed, much less into the period before the appellant separated from service. In this case, the disputed evidence relates to a period prior to the appellant's discharge from active duty. He was discharged from active duty on February 7, 1991. R. at 27. He filed his claim for service connection on August 12, 1992. R. at 107. The earliest date for which he could be granted service connection is the date of his August 12, 1992, claim. *See* 38 U.S.C. § 5110(a). Because *Fenderson* requires VA to consider evidence throughout the period for which a claimant is service connected in an initial claim for benefits so a staged rating may be considered, and the disputed evidence in this case does not address the degree of the appellant's disability during the period for which he is eligible for service connection, our decision here does not conflict with *Fenderson*.

To the extent that our dissenting colleague argues that the records are necessary for the Secretary to perform his general duty to view the appellant's condition "in relation to its history," he offers no theory as to how *prejudicial* error has occurred here. *See Conway v. Principi*, 353 F.3d 1369, 1373 (Fed. Cir. 2004). The question before the Court is whether this evidence could change the amount of benefits to which the appellant is entitled? Neither the dissent nor the appellant has presented such a theory. It is certainly true that the precise content of the disputed records (assuming they exist) is not known to the Court. Nonetheless, the Court does know that the appellant is not entitled to compensation for symptoms experienced in January 1991 when his condition is being rated only from September 1992 forward. No argument has been presented that the extensive evidence from September 1992 forward does not accurately describe the symptoms the appellant experienced during the time period for which he is entitled to compensation.

In summary, the claim on review is for a higher disability rating based on the symptoms experienced by the appellant after September 16, 1992, not for a different diagnosis or a more complete picture of the circumstances surrounding the origin of his disability; the record contains substantial direct evidence of the level of the appellant's disability during the time in question as well a detailed and contemporaneous SMR prepared by the same physician who treated the appellant

during his in-service hospitalization; and the alleged SMRs at issue could be no better than circumstantial evidence as they predate the period in dispute by well over a year. Hence, the Court cannot conclude that the essential fairness of the Board decision was affected when the alleged SMRs predate the period at issue and the Board had copious direct evidence of the symptoms experienced by the appellant after September 16, 1992.

B. Adequacy of the Medical Examinations

The appellant also argues VA violated its duty to assist by failing to conduct an adequate medical examination. Br. at 8. The Secretary is required to provide a medical opinion when such an opinion is necessary to make a decision on the claim. *See* 38 U.S.C. § 5103A(d). Such medical opinions must be "accurate and fully descriptive, with emphasis upon the limitation of activity imposed by the disabling condition." *See* 38 C.F.R. § 4.1 (2006). An opinion is adequate where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's "evaluation of the claimed disability will be a fully informed one." *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (quoting *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991)); *see also Floyd v. Brown*, 9 Vet.App. 88, 93 (1996).

The appellant specifically argues that, pursuant to *Friscia v. Brown*, 7 Vet.App. 294, 297 (1994), "the examination must include an opinion on the effect the veteran's service-connected disabilities have on his ability to work." Br. at 12. He asserts that the December 1992, November 1996, February 1998, and October 2002 medical examinations were all inadequate because the examiners did not adequately discuss the effect of the disability on his ordinary activities and employment. Br. at 11-14. We disagree. Because the medical examiners discussed how his condition affected him in the work environment, his argument must fail.

The regulations impose specific duties on medical examiners and rating specialists. The medical examiner provides a disability evaluation and the rating specialist interprets medical reports in order to match the rating with the disability. Title 38, § 4.10 of the Code of Federal Regulations describes the responsibilities of a medical examiner in the veterans benefits system:

> The basis of disability evaluations is the ability of the body as a whole, or of the psyche, . . . to function under the ordinary conditions of daily life including employment. . . . This imposes upon the medical examiner the responsibility of furnishing . . . full description of the effects of disability upon the person's ordinary

8

activity. In this connection, it will be remembered that a person may be too disabled to engage in employment although he or she is up and about and fairly comfortable at home or upon limited activity.

38 C.F.R. § 4.10 (2006). In addition, "[f]or the application of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition." 38 C.F.R. § 4.1 (2006).

How those disabilities translate into a potentially compensable disability is in the sphere of responsibilities of a rating specialist. *See* 38 C.F.R. § 4.2 (2006). Title 38, § 4.2 of the Code of Federal Regulations describes the responsibilities of a rating specialist:

It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. Each disability must be considered from the point of view of the veteran working or seeking work.

Thus, medical examiners and rating specialists, while having different responsibilities, may both be required to discuss the veteran's ability to work as it pertains to the veteran's ordinary activities.

The appellant's reliance on *Friscia* as contradicting this allocation of responsibilities is unavailing. The Court in *Friscia* limited its holding to claims where the occupational history of the claimant is relevant, concluding that the Board had a duty, where the critical issue was total disability based on individual unemployability (TDIU), to request a medical opinion to discuss what effect the veteran's service-connected disability had on his ability to work. *Friscia,* 7 Vet.App. at 297. As observed in *Friscia*, regulations governing TDIU, such as 38 C.F.R. § 4.16 (2006), and adjudication procedures found in the VA *Adjudication Procedure Manual, M21-1*, Part VI, make a veteran's occupation relevant. *Id*. at 296-97. Accordingly, even though a doctor is not an expert on employment in general, once the regulations make a claimant's specific occupation relevant, then it is possible to get a medical opinion on whether a claimant's service-connected disabilities prevent him or her from performing the ordinary tasks of that profession. Hence, the Court in *Friscia* required a medical opinion on whether the appellant's post-traumatic stress disorder rendered him unable to perform the ordinary tasks associated with aeronautics, business administration, and computer programming–the education and professions listed by the appellant. But, that case is inapplicable here because the Secretary was reviewing Mr. Friscia's eligibility for TDIU. *Id*. at 295.

In this case the appellant is not seeking a TDIU rating, merely a higher-than-previously-granted disability rating for atypical affective disorder.

The allocation of responsibilities between a medical examiner and a rating specialist is also discussed in *Beaty v. Brown*, 6 Vet.App. 532 (1994). In *Beaty*, a medical examination on the appellant's ability to perform specific tasks associated with his profession was appropriate and necessary. Mr. Beaty was awarded service connection in 1950 for injuries of the left eye, left thigh, left hand, jaw, right eye, and multiple minute scars. *Id*. at 534. He was service connected for the conditions with a combined 70% disability rating. *Id*. He had an eighth-grade education and the only profession he had ever known was farming. *Id*. at 535. A physician advised him to "retire" because of his service-connected disabilities. *Id*. at 538. The Board found he was employable and denied his claim for TDIU benefits. *Id*. at 537. It cited the rejection letter from a prospective employer, the owner of an auto service center, who had turned him down for a job because the employer did not offer a training program and could not hire someone without adequate experience. *Id*. The Board's finding that he could do automotive work was contradicted by a VA medical examiner who reported that, because of his service-connected hand gunshot wound, he could not grip tools such as a hammer or pair of pliers. *Id*. at 537. In reversing the Board decision, the Court found that, where the claimant's ability to perform the tasks of a certain profession is relevant, a medical opinion on whether the claimant can perform those tasks is appropriate.

Neither *Beaty* nor *Friscia* changed the regulatory allocation of responsibilities between rating specialists and medical examiners. Rating specialists determine, through the rating schedule, the effect of a disability on a claimant's ability to earn a living, but in addition to the rating specialist, a medical professional may be required to give an opinion on specific questions such as whether a claimant's condition precludes standing for extended periods, lifting more than a certain weight, sitting for eight hours a day, or performing other specific tasks. Here though, the appellant does not seek benefits under a regulation that requires consideration of his ability to perform a particular job. Although our dissenting colleague asserts any discussion of *Friscia* and *Beaty* is obiter dictum, the appellant asserted the examinations were inadequate in light of *Friscia*. Br. at 12. Accordingly, the Court is compelled to discuss *Friscia* in concluding that the appellant's reliance on that case is misplaced. Our analysis of the relevant regulations is the basis for our rejection of the appellant's

characterization of our holding in *Friscia.* It is not a basis for ignoring the appellant's explicit argument that *Friscia* mandates a ruling that the medical examination was inadequate in this case.

The requirement that medical examiners provide a report adequate for a rating decision will frequently require them to discuss, as the examiners did here, how the disability manifests itself in the claimant's ordinary activities, which include employment. *See* 38 C.F.R. § 4.10. However, it does not require medical examiners to offer opinions on the general employability of a claimant.

In this case, the medical examiners and clinicians have, from the outset, appropriately discussed how the appellant's condition affected his ordinary activities, including work. Although employed (R. at 112), he was "irritable and anxious and hypervigilent" (R. at 113). He had difficulty managing anger and was irritable. R. at 141. He was employed but irritable, angry and depressed at home. R. at 143-44. "He has held a series of manufacturing jobs which he left for better opportunities or which went out of business. . . . He admits that his anxiety has never interfered with his performance at work and that he always gets good evaluations on the job." R. at 175. "[H]e is functioning quite well and is not limited in any major life activity." R. at 176. "He states that one of the ways that he deals with his stress is he is actually working not only a regular week, but in addition to that, working quite a bit of overtime . . . ." R. at 318. "He does work full-time, in fact works a lot of overtime, to help deal with the financial difficulties, but he clearly has significant impairment in his family life and his social functioning." R. at 320. "It appears that the area of social functioning is most impacted by Mr. Moore's symptoms." R. at 362. "Mr. Moore suffers from an anxiety disorder that has been exacerbated by the loss of his job." R. at 367. The medical examinations appropriately discussed the appellant's employment history in such a way as to illustrate his symptoms in a manner that the rating specialist could then apply those symptoms to the rating code. In summary, it was appropriate under § 4.10 for the medical examiner to discuss the appellant's specific employment history to illustrate his anxiety, depression, irritability, and other symptoms. However, the question of how those symptoms translate into a disability rating based on the "average impairment in earnings capacity" was properly left to the Board under § 4.2.

Accordingly, the appellant misses the mark in arguing that the medical examinations were inadequate because the examiners did not opine on his general ability to work. He does not argue that his symptoms were not accurately described by a medical report of record. Further, reliance on

*Friscia*, which is properly limited to cases in which the occupational history of the claimant is relevant, is misplaced. It was the role of rating specialists to take the medical evidence of his symptoms and limitations and determine the effect they had on his general ability to work. A contrary holding would call into question the key premise of the VA rating system: that lay rating specialists are fit to evaluate the effect of a medical disability on a veteran's ability to work. Although our dissenting colleague asserts the discussion of *Friscia* and *Beaty* is orbiter dictum, the appellant specifically argues the medical opinions of record were inadequate pursuant to *Friscia*. VA must abide by relevant statutes, regulations, and caselaw. *See* 38 U.S.C. §§ 7261(a)(1), (a)(3)(C)-(D). A finding that VA has satisfied regulatory requirements is not dispositive of whether it has satisfied caselaw requirements. Hence, the Court concludes that the medical opinion sought by the appellant on appeal is neither necessary nor appropriate for rating his condition.

### III. CONCLUSION

Based upon the foregoing, the August 16, 2004, Board decision is AFFIRMED.


KASOLD, *Judge*, dissenting: Because I believe the majority misapply the law, I respectfully dissent. A primary issue in this case is whether reasonably identified service medical records regarding the hospitalization of Mr. Moore for a psychiatric problem should have been obtained by the Secretary, and, if not obtained, whether the Secretary should have so informed Mr. Moore. There is no dispute that the Secretary has a specific, statutory duty to obtain all relevant service medical records or inform the claimant that he could not do so. *See* 38 U.S.C. § 5103A(a)(2), (b)(2)-(3), (c). There also is no dispute that the Secretary did not obtain these in-service hospitalization records and did not so inform Mr. Moore.

Despite the fact that the hospitalization records relate to an in-service psychiatric disability and Mr. Moore's claim for disability compensation is based on his psychiatric disability, and despite the fact the Secretary's own regulations require a disability to "be viewed in relation to its history" for rating purposes, *see* 38 C.F.R. § 4.1 (2006), and further require that the weight to be given the evidence is to be "thoroughly and conscientiously studied," 38 C.F.R. § 4.3 (2006), the majority, on de novo review, find that the hospitalization records are not relevant and that therefore the Board did

not err in not securing them. In addition to the obvious fact that these hospitalization records are generally relevant on their face as well as the fact that the majority cannot know the contents of the records that the Secretary failed to obtain and that are not available for review, the majority makes its relevancy finding in the first instance and in the absence of any decision below regarding the relevance of the documents or why they were not obtained. *See Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) ("The [Board] has the duty to assess the credibility and weight to be given to the evidence."); *see also Ashmore v. Derwinski*, 1 Vet.App. 580, 582 (1991).

In finding that the hospital records are not relevant, the majority rely on (1) the fact that the Board reviewed other service medical records regarding Mr. Moore's psychiatric condition and (2) the proposition that since Mr. Moore has been awarded service connection, the only remaining issue is the appropriate disability rating after the grant of service connection. As to the first basis, it is axiomatic that having *some* relevant evidence on an issue is inapposite to the issue of relevancy of other evidence on the issue. *See Baritsky v. Principi*, 4 Vet.App. 41, 43 (1993) (noting that relevant and material evidence was also cumulative in that case). Moreover, to the extent the existence of *some* relevant records may enter into consideration of whether a claimant has been prejudiced by the failure of the Secretary to secure all relevant records, without having the benefit of viewing the records, one cannot quantify whether the service medical records regarding Mr. Moore's week-long hospitalization for a psychiatric condition simply duplicate others in the record. Indeed, almost by definition, these records likely are far more descriptive of his disability than other, non-hospitalization records. In the face of the statutory duty to obtain all relevant service medical records, it cannot be said that there is no prejudice in not obtaining these hospital records when they are relevant on their face and not available for review.[1] *Cf. Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) (refusing to apply the harmless error analysis and holding: "Where the effect

---

[1] The observation of the majority that I do not offer a theory of prejudice ignores my discussion of 38 C.F.R. §§ 4.1 and 4.3, and the fact that the hospital records are likely more telling of Mr. Moore's disability than outpatient records and therefor required to be considered pursuant to those regulations. The observation of the majority also evinces a failure to recognize that (1) the hospital records are prima facie relevant, (2) the Secretary has a statutory duty to obtain all relevant service medical records, (3) in the absence of the documents, prejudice is unquantifiable, and (4) under these circumstances, the Court should not speculate as to what the outcome would have been had the records been obtained. *See Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004).

13

of an error on the outcome of a proceeding is unquantifiable . . . , we will not speculate as to what the outcome might have been had the error not occurred.").

As to the latter basis for the majority's conclusion that the hospital records are not relevant, the majority fail to recognize that, even assuming that the degree of disability after submission of the claim (as opposed to during service) is the primary issue, the evaluation of that disability, as noted above, must nevertheless "be viewed in relation to its history" based on a thorough and conscientious study of the evidence. 38 C.F.R. §§ 4.1, 4.3. Here, a significant part of Mr. Moore's medical history relevant to his psychiatric disability is simply missing. Thus, the probative value of that missing evidence could not have been, and was not, "thoroughly and conscientiously studied" below (or here, for that matter). *See Wagner*, *supra*. Moreover, this case involves an initial disability rating, and the majority's premise that the specific disability level extant after submission of a claim is the primary issue in an initial disability rating decision – as it is for an increased-rating claim – is contrary to our caselaw. *See Fenderson v. West*, 12 Vet.App. 119, 126 (1999) (explicitly rejecting the concept that the current level of disability is of "primary importance" in an initial disability rating, as opposed to an increased rating claim).[2] In sum, the majority's conclusion that the missing hospitalization records are not relevant has no basis in fact or law.

I also write separately to note that although I agree with the majority that medical opinions addressing the impact that service-connected disabilities have on one's work ability are necessary to a proper rating when, as here, those ratings are specifically dependent on such impact, *see* 38 C.F.R. §§ 4.1 and 4.10 (2006); *see also* 38 C.F.R. § 4.130, Diagnostic Code 9410 (2006) (each disability rating above 0% is based, in part, upon occupational impairment due to disability), and further agree that the medical examinations in this case complied with these regulatory requirements, I fail to understand why the majority reject the application of *Friscia v. Brown*, 7 Vet.App. 294 (1994), and *Beaty v. Brown*, 6 Vet.App. 532 (1994), to this issue. In my view, they stand for the very same

---

[2] Although the majority find *Fenderson* inapposite because it involved a remand for consideration of medical records back to the date of discharge, this view ignores the fact *Fenderson* involved an issue over the weight given to post-service medical records that were in the file and did not involve, as is the case here, missing service medical records addressing the disability for which benefits are sought. The import and relevance of *Fenderson* to the issue in this case is that, as stated in the text of my dissent, the Court explicitly rejected the concept underlying the majority opinion; i.e., that the current level of disability is of "primary importance" in an initial disability rating. *Fenderson*, 12 Vet.App. at 126.

14

proposition, i.e., that a determination as to the impact that service-connected disabilities have on one's work ability is necessary to a proper rating when the disability rating is specifically dependent on such impact. To the extent that the majority's analysis may come into play in the future, I note my objection. I further note that, inasmuch as the Court today concludes that §§ 4.1 and 4.10 require medical examiners to render rating opinions that address the impact of disabilities on work ability when the rating criteria specifically take into consideration this factor and further finds that the medical opinions in this case met that standard, any discussion of *Friscia* and *Beaty* – even though raised expressly by the appellant – is unnecessary to the disposition of this appeal and the conclusion that these cases are not applicable is obiter dictum. *Cf. Hatch v. Principi*, 18 Vet.App. 527, 531 (2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (the result and opinion necessary for result is binding)).