Citation Nr: 1826248 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 13-20 380 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Roanoke, Virginia


THE ISSUES

1. Entitlement to a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU) prior to August 1, 2013.

2. Entitlement to a TDIU for compensation purposes from August 1, 2013 to June 20, 2016.


REPRESENTATION

Appellant represented by: Paul Kachevsky, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran (Appellant)


ATTORNEY FOR THE BOARD

E. Choi, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from January 1970 to February 1972.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2013 rating decision of the RO in Roanoke, Virginia, which, in pertinent part, denied a TDIU for compensation purposes.

In March 2017, the Veteran testified at a Board Videoconference hearing in Roanoke, Virginia, before the undersigned Veterans Law Judge sitting in Washington, D.C. A transcript of the hearing has been associated with the electronic file. 

In September 2017, the Board granted a TDIU from June 20, 2016 forward and remanded the issue of a TDIU prior to June 20, 2016 to the RO for further adjudication following implementation of the service connection grants contained in the September 2017 Board decision. The Board's September 2017 decision also denied an increased rating in excess of 20 percent for the service-connected diabetes mellitus type II, which the Veteran has appealed to the United States Court of Appeals for Veterans Claims (Court).

The issue of a TDIU prior to August 1, 2013 is addressed in the REMAND portion of the decision below and is REMANDED to the RO.




FINDING OF FACT

For the period from August 1, 2013 to June 20, 2016, the Veteran has been unable to maintain (follow) substantially gainful employment as a result of service-connected disabilities.


CONCLUSION OF LAW

Resolving reasonable doubt in favor of the Veteran, the criteria for a TDIU from August 1, 2013 to June 20, 2016 have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.340, 3.341, 4.3, 4.15, 4.16, 4.18, 4.19, 4.25 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2017). As the instant decision grants a TDIU from August 1, 2013 to June 20, 2016, and remands the issue of a TDIU prior to August 1, 2013, no further discussion of VA's duties to notify and to assist is necessary.

Entitlement to a TDIU from August 1, 2013 to June 30, 2016

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. 38 U.S.C. § 1155. Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. 38 C.F.R. § 3.340(a)(1). Total ratings are authorized for any disability or combination of disabilities for which the rating schedule prescribes a 100 percent rating. 38 C.F.R. § 3.340(a)(2).

A TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue will be addressed in both instances. 38 C.F.R. § 4.16(a), (b).

If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

If a veteran's disabilities do not meet the objective combined rating percentage criteria of 38 C.F.R. § 4.16(a), it then becomes necessary to consider whether the criteria for referral for extraschedular consideration are met under § 4.16(b) criteria. It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Submission to the Director, Compensation and Pension Service, for extraschedular consideration is warranted in all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16(a). 38 C.F.R. § 4.16(b). See Wages v. McDonald, 27 Vet. App. 233 (2015) (holding that a decision of TDIU under 38 C.F.R. § 4.16(b) by the Director of C&P is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board). Cf. Kuppamala v. McDonald, 27 Vet. App. 447 (2015) (applying principles announced in Wages to 38 C.F.R. § 3.321(b) extraschedular adjudication, namely, Director of C&P decision is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board).

Individual unemployability must be determined without regard to any non-service-connected disabilities or a veteran's advancing age. 38 C.F.R. 
§§ 3.341(a), 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether a veteran is capable of performing the physical and mental acts required by employment, not whether a veteran can find employment. Id. at 361. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in a veteran's favor. 38 C.F.R. 
§ 4.3.

In Faust v. West, 13 Vet. App. 342 (2000), the Court defined "substantially gainful employment" as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a veteran actually works and without regard to a veteran's earned annual income. In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the Court held that the central inquiry in determining whether a veteran is entitled to a TDIU is whether a veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. The determination as to whether a total disability is appropriate should not be based solely upon demonstrated difficulty in obtaining employment in one particular field, which could also potentially be due to external bases such as economic factors, but rather to all reasonably available sources of employment under the circumstances. See Ferraro v. Derwinski, 1 Vet. App. 326, 331-332 (1991). 

In evaluating a veteran's employability, consideration may be given to the level of education, special training, and previous work experience in arriving at a conclusion, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

Marginal employment is not considered substantially gainful employment and generally is deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist in certain cases when earned annual income exceeds the poverty threshold on a facts-found basis. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). Marginal employment, odd-job employment, and employment at half the usual remuneration is not incompatible with a determination of unemployability if the restriction to securing or retaining better employment is due to disability. 38 C.F.R. § 4.17(a) (2017).

The ultimate issue of whether a TDIU should be awarded is not a medical issue, but rather is a determination for the adjudicator. See Moore v. Nicholson, 21 Vet. App. 211, 218 (2007) (ultimate question of whether a veteran is capable of substantial gainful employment is not a medical one; that determination is for the adjudicator), rev'd on other grounds sub nom, Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009). Although VA must give full consideration, per 38 C.F.R. § 4.15, to "the effect of combinations of disability," VA regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner's opinion. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013); 38 C.F.R. § 4.16(a); see also Smith v. Shinseki, 647 F.3d 1380, 1385-86 (Fed. Cir. 2011) (VA is not required to obtain an industrial survey from a vocational expert before making a TDIU determination but may choose to do so in an appropriate case).

In this case, the Veteran has advanced being unable to secure (obtain) or maintain (follow) substantially gainful employment due to service-connected disabilities. After a review of all the evidence, lay and medical, the Board finds that entitlement to a TDIU is warranted for the period from August 1, 2013 to June 20, 2016. 

Prior to August 1, 2013, the Veteran's service-connected disabilities did not meet the regulatory schedular rating requirements of 38 C.F.R. § 4.16(a) for consideration of a TDIU; however, beginning on August 1, 2013, the combined schedular disability rating eligibility criteria for a TDIU under 38 C.F.R. § 4.16(a) have been met. As of August 1, 2013, the Veteran was service connected for diabetes mellitus type II (20 percent disabling), peripheral neuropathy in the right upper extremity (10 percent disabling), peripheral neuropathy in the left upper extremity (10 percent disabling), peripheral neuropathy in the right lower extremity (20 percent disabling), peripheral neuropathy in the left lower extremity (20 percent disabling), residuals of a cerebellar stroke (10 percent disabling), diabetic nephropathy with hypertension (0 percent disabling), and erectile dysfunction (0 percent disabling).

After reviewing all of the evidence of record, both lay and medical, the Board finds that the evidence is at least in equipoise on the question of whether the Veteran's service-connected disabilities prevent maintaining substantially gainful employment for the period from August 1, 2013 to June 20, 2016. The most recent June 2017 Application for Increased Compensation Based on Unemployability (TDIU claim) reflects the Veteran has not worked full time since June 2009 due to the service-connected diabetes. In a previous June 2012 TDIU claim, the Veteran asserted the reason for leaving his last job was due to the service-connected diabetes, stroke, and high blood pressure. Specifically, the Veteran stated that the former employer would not accommodate snack breaks needed to manage the diabetes.

An August 2009 Application for Social Security Disability Benefits shows the Veteran's employment history consisted primarily of work in the construction industry. The Veteran also reported working as a property manager, which involved performing various maintenance and repair tasks as needed. The Veteran wrote on the August 2009 Social Security application that he had been laid off from his last job in the construction industry because he had missed too many days from work due to disabilities such as the service-connected high blood pressure and (non-service-connected) knee pain. 

A June 2011 private treatment record reflects the Veteran exhibited some high level balance deficits and speech deficits after suffering from the service-connected cerebellar stroke, which was caused by a hyperglycemic event. While the June 2011 private provider noted that the high level balance deficits would not interfere with everyday activity, the private provider also stated that the Veteran should not be climbing ladders or up on roofs for work. The June 2011 private provider's assessment was that the high level balance deficits would make the Veteran's current job working in construction difficult, but that the Veteran was safe to perform work on level surfaces. 

During the March 2017 Board hearing, the Veteran also testified to suffering from short and long term memory impairment, which was confirmed by an April 2017 private medical examination. The Veteran is in receipt of a 10 percent disability rating for the service-connected cerebella stroke residuals during the period from August 1, 2013 to June 20, 2016 based on impairment of short and long term memory.

A September 2015 VA examination report for diabetic sensory-motor peripheral neuropathy reflects the service-connected diabetic peripheral neuropathy in the lower extremities have resulted in mild incomplete paralysis of the sciatic nerves, with symptoms of mild paresthesia and tingling in the feet. An April 2016 VA treatment record shows that the service-connected peripheral neuropathy in the upper extremities has manifested in symptoms of numbness in the hands and that the Veteran reported no longer being able to perform fine tasks with his hands. During the March 2017 Board hearing, the Veteran testified to needing assistance performing tasks involving fine motor function such as buttoning a shirt.

An August 2016 VA examination report shows that the service-connected coronary artery disease has been manifested by a left ventricular ejection fraction of 25-30 percent, and that the Veteran experienced symptoms of dyspnea with activities such as sawing wood or climbing a flight of stairs quickly.

Further, VA treatment records throughout the period from August 1, 2013 to June 20, 2016, show that, while the service-connected hypertension disability had generally been under good control with medication, the Veteran also experiences symptoms of dizziness or fainting episodes due to the hypertension medication.

Based on the above evidence and resolving reasonable doubt in the Veteran's favor, the Board finds that the service-connected disabilities prevented the Veteran from maintaining substantially gainful employment for the period from August 1, 2013 to June 20, 2016. The medical evidence of record demonstrates that symptoms of the Veteran's service-connected disabilities, considered together and in light of the nature and job demands in the construction industry, have prevented the Veteran from maintaining substantially gainful employment for the period from August 1 2013 to June 20, 2016. Further, the evidence shows that the Veteran suffers from impaired short and long term memory and impaired speech due to the service-connected cerebellar stroke, which have prevented the Veteran from maintaining substantially gainful sedentary employment.

Based on the above, the Board finds that the evidence is at least in equipoise as to whether the service-connected disabilities preclude the type of employment for which the Veteran is trained and has experience. In light of the Veteran's employment history in occupations requiring a moderate amount of physical activity and agility working on uneven surfaces, and resolving reasonable doubt in the Veteran's favor, the Board finds that the Veteran's service-connected diabetes, hypertension, peripheral neuropathy in the bilateral upper and lower extremities, coronary artery disease, and stroke residuals prevented the Veteran from maintaining substantially gainful employment for the period from August 1, 2013 to June 20, 2016.

The ultimate issue of whether a TDIU should be awarded is not a medical issue, but rather is a determination for the adjudicator. See Geib, 733 F.3d at 1354; Moore, 21 Vet. App. at 218, rev'd on other grounds sub nom, Moore, 555 F.3d 1369; see also 38 C.F.R. § 4.16. The test is not whether the Veteran would have been precluded from all types of employment, such as sedentary employment, but whether such employment was realistically within the physical and mental capabilities of the claimant. For these reasons, and resolving all reasonable doubt in 

the Veteran's favor, the Board finds that the service-connected disabilities rendered the Veteran essentially unemployable; thus, entitlement to a TDIU is warranted from August 1, 2013 to June 20, 2016. 38 C.F.R. §§ 3.340, 3.341, 4.15, and 4.16.


ORDER

A TDIU for the period from August 1, 2013 to June 20, 2016 is granted.


REMAND

TDIU prior to August 1, 2013

Although the Veteran's service-connected disabilities did not meet the regulatory schedular rating requirements of 38 C.F.R. § 4.16(a) for consideration of a TDIU for the period prior to August 1, 2013, the evidence of record discussed above suggests that the Veteran may have been unemployable due to service-connected disabilities for this period. 

Accordingly, the issue of a TDIU prior to August 1, 2013 is REMANDED for the following actions:

1. In accordance with 38 C.F.R. § 4.16(b), refer the issue of TDIU for the period prior to August 1, 2013 to the VA Under Secretary for Benefits or the VA Director of the Compensation and Pension Service for adjudication of TDIU.

2. Then, readjudicate the issue of TDIU. If the benefit sought on appeal remains denied, the Veteran and representative should be provided a Supplemental Statement of the Case. An appropriate period of time should be allowed for response before the case is returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that 
are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).





______________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs