﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 191205-48838
DATE: August 31, 2020

ORDER

Severance being improper, restoration of service connection for obstructive sleep apnea (OSA) is granted.

Service connection for joint pain of the knuckles of the right hand is denied.

REMANDED

The claim for service connection for hives is remanded.

The claim for service connection for sinusitis is remanded.

FINDINGS OF FACT

1. The evidence is at least in equipoise as to whether the Veteran’s OSA started during his service or is etiologically related to or the result of his service.

2. The Veteran does not suffer from a disability of the right knuckles related to his service or a service-connected disability.

CONCLUSIONS OF LAW

1. The severance of service connection for OSA was improper. 38 U.S.C. § 5112; 38 C.F.R. § 3.105.

2. The criteria are not met for entitlement to service connection for joint pain of the right knuckles as directly due to service or as secondary to a service-connected disability. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from August 2000 to August 2004. 

Service Connection 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury in service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Service connection also is permissible on a secondary basis for disability that his proximately due to, the result of, or aggravated by a service-connected disability. 38 C.F.R. § 3.310(a) and (b); see also Allen v. Brown, 7 Vet. App. 439 (1995).

1. OSA

The Board notes at the outset that, while this claim has been appealed to the Board as one for service connection, inherently, the question of whether the severance of service connection for OSA was proper also must be addressed. If it was not appropriate to severe service connection for OSA, then this benefit must be reinstated, in turn meaning the Board need not address this entitlement.

By way of history, in April 2018, the Veteran was granted service connection for OSA based on a supporting March 2018 VA examination opinion linking his OSA to his service-connected posttraumatic stress disorder (PTSD). However, in January 2019, the local regional office (RO) proposed to sever that grant of service connection for OSA based upon further review and interpretation of the evidence and of that same VA examination. The RO provided the Veteran notice of the proposed severance and gave him opportunity to submit evidence in support of his claim within the required time frame to show why the severance should not occur. 

The RO later, however, severed service connection for OSA in a May 2019 rating decision prospectively effective as of August 1, 2019. The RO then obtained a medical opinion related to that decision in August 2019 and upheld its severance in September 2019. 

The Veteran did not in response file a formal Notice of Disagreement (NOD) with that decision. Instead, in September 2019, he filed an entirely new claim for service connection for OSA. But, although he did not use the proper form to appeal the severance of service connection, as the appeal period is still running with regard to that claim, and to protect the effective date of this decision not to sever service connection for OSA which favors him, the Board will treat the claim as though it has been ongoing since the May 2019 rating decision severance.

Service connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (CUE) (the burden of proof being on the Government). 38 C.F.R. § 3.105(d).

To establish that a grant of service connection was the product of CUE, VA must show that (1) either the correct facts as they were known at the time were not before the adjudicator, the adjudicator made an erroneous factual finding, or the statutory or regulatory provisions were incorrectly applied; (2) the alleged error was undebatable, not merely a disagreement as to how the facts were weighed or evaluated; and (3) the error manifestly changed the outcome of the prior decision. See Allen v. Nicholson, 21 Vet. App. 54, 58-59 (2007); Stallworth v. Nicholson, 20 Vet. App. 482, 487-88 (2006); cf. Bustos v. West, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999); Damrel v. Brown, 6 Vet. App. 242, 245 (1994); Russell v. Principi, 3 Vet. App. 310, 313-14, 319 (1992) (en banc). A clear and unmistakable error is one about which reasonable minds could not differ. See, e.g., 38 C.F.R. § 20.1403(a).

Here, the Board finds that CUE has not been shown in the initial grant of service connection for the OSA; thus, this benefit for this condition must be restored as of the date it was discontinued.

In March 2018, a VA examiner concluded that it was at least as likely as not that the Veteran’s PTSD caused or aggravated his OSA. In other words, the OSA was secondary to the PTSD according to 38 C.F.R. § 3.310 and the holding in Allen and its’ progeny of cases. The examiner explained that a review of the Veteran’s records showed sleep disturbance related to his PTSD. So that then current examination could easily show the Veteran’s OSA was related to his PTSD. Based upon the Veteran’s history, the examination findings, and records review, it was likely (certainly as likely as not) that his OSA was related to his PTSD – by aggravation if not by causation.

While it is true that sleep impairment often is a symptom associated with PTSD, so rated as parcel and parcel of PTSD under the criteria of 38 C.F.R. § 4.130, Diagnostic Code (DC/Code) 9411, rather than as a separate disability in and of itself, the mere fact that the VA examiner in March 2018 associated the OSA with the PTSD, in turn, provided a tenable basis for granting service connection for the OSA. That is to say, the decision to do that was not fatally flawed or egregious.

In August 2019, a VA examiner reviewed the file and contrarily concluded that the Veteran’s OSA was less likely than not caused by his PTSD. The examiner explained that OSA, instead, was secondary to a dynamic narrowing of the upper airway such as closure of the oral pharynx during sleep and was not caused or aggravated by a psychological condition (in this instance meaning PTSD). The examiner further found that the Veteran’s OSA clearly and unmistakably had existed prior to his service and was clearly and unmistakably not aggravated by his PTSD.

 

But, after reviewing these two conflicting opinions, the Board questions the legal standard employed by the August 2019 VA examiner since there is not a question as to whether the OSA pre-existed the Veteran’s service, and there also is no legal basis to use the clear and unmistakable standard of proof in this instance. Moreover, a review of both opinions appears to be totally reliant to expert opinion, without any recitation to medical research or treatises. Both opinions are weighed equally in that regard. Thus, the Board finds that the opinions are of equal weight in this instance; neither opinion is necessarily more probative than the other.

As is usually the case in the Veterans’ benefits context, when there is reasonable doubt over whether a benefit should be granted versus denied (or, here, restored), this reasonable doubt will always fall in favor of the Veteran. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

Further in this regard, the medical evidence suggest the Veteran might very well have suffered from OSA during his time in service, as he initially underwent testing for this condition in 2003, but the testing was not conclusive due to sleep trouble without a sleeping aid. Therefore, the possibility of in-service incurrence (as opposed to pre-service), and certainly continuity since service, weigh in his favor.

When considering all the above, the Board finds that the severance of service connection for OSA was improper. The RO essentially weighed one VA opinion over another, which is a re-weighing of the evidence. The perceived error in the initial grant is certainly debatable, and the severance of service connection is in fact a mere disagreement with how the facts initially were weighed or evaluated, rather than an error about which reasonable minds could not differ. Thus, as the elements of CUE have not been met, severance of service connection for OSA was improper, and service connection for OSA consequently is restored (reinstated) as of the date this benefit was discontinued.

 

2. Joint Pain of the Right Knuckles

The Veteran contends that he suffers from a disability manifested by joint pain of the right knuckles due to trauma to the hand while in service. He is already in receipt of service connection for a right thumb disability due to this in-service injury. He contends the he also suffers from pain in his knuckles as part of this injury.

However, the Board finds that the Veteran does not suffer from a ratable disability manifested by joint pain in his right knuckles. On October 2018 VA examination, his right hand was evaluated. The examiner concluded the Veteran did not suffer from any additional disability of his right hand – meaning other than the already service-connected right thumb disability. His VA treatment records and other medical records in his claims file also do not demonstrate the existence of a ratable disability manifested by joint pain of his right knuckles.

The Board has considered Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018), wherein the Federal Circuit Court held that “pain alone, without an accompanying diagnosis of a present disease, can qualify as a disability” if it “reaches the level of a functional impairment of earning capacity.” Id. at 1367-69. While medical diagnoses are not always necessary to establish a current disability for VA compensation purposes, there must be some competent evidence indicating the Veteran’s impairment rises to the level to affect earning capacity – in other words, his impairment (in this case, the Veteran’s complaint of right knuckles joint pain) must be of sufficient severity, duration, and frequency that it affects his ability to function under the ordinary conditions of life. See Wait v. Wilkie, No. 18-4349 (Aug. 26, 2020).

The Veteran has reported that his right knuckles hurt. But, even if true, there is not the required indication of a consequent functional impairment of his earning capacity. On VA examination, range of motion of his right hand and fingers was within normal range, and other physical testing also was within normal range. So, it is not shown his pain causes any functional impairment, certainly not in his earning capacity. Although pain may cause a functional loss, pain itself does not constitute functional loss. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

Accordingly, the Board finds that the Veteran has not met his threshold preliminary pleading-and-proof requirement of showing he has current disability involving his right-hand knuckles. See Moore v. Nicholson, 21 Vet. App. 211, 215 (2007), citing Francisco v. Brown, 7 Vet. App. 55, 58 (1994) (“Compensation for service-connected injury is limited to those claims which show a present disability.”); Degmetich v. Brown, 8 Vet. App. 208 (1995); 104 F.3d 1328 (1997) (requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary).

The Veteran is not competent to attribute his pain to an underlying diagnosis. This issue is medically complex, not simple. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

REASONS FOR REMAND

1. Hives

The Veteran contends that, often, when he has PTSD-related nightmares, he breaks out in hives that last for a few days at a time. He reports that he treats his hives with antihistamines. An April 2005 VA treatment record reflects his report that, when he woke up after a dream that past week, he had hives. In October 2018, a VA examiner concluded the Veteran’s hives were not related to medication used to treat his right thumb disability and found no evidence of hives during the then current examination. However, because the Veteran is competent to report recurrent outbreaks of hives and that he notices them following nightmares owing to his PTSD, the Board finds that the duty to assist has not been fulfilled in obtaining more comment concerning the origin of his hives. A VA opinion is still needed concerning whether his hives are secondary to his PTSD.

 

2. Sinusitis

The Veteran contends that, since returning from his deployment to the Persian Gulf region, he has suffered from respiratory symptoms. Although in October 2018 he underwent a VA examination, an opinion as to whether his respiratory symptoms were related to his service, to include as due to environmental toxins while serving in the Persian Gulf region, was not provided. Therefore, the duty to assist has not been fulfilled and a new VA examination and opinion should be obtained.

Accordingly, these clams are REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of the Veteran’s reported recurrent hives. The examiner is specifically asked to opine on whether it is at least as likely as not the hives are caused OR aggravated by the Veteran’s PTSD, when considering his claim that, when he has nightmares owing to his PTSD, he awakens with hives that he treats with antihistamines. 

 

2. Also schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of the Veteran’s reported respiratory symptoms – including if owing to sinusitis. In this regard, the examiner is specifically asked to opine on whether the Veteran’s respiratory symptoms, to include rhinitis and/or sinusitis, are due to his service, especially from environmental toxins inhaled while serving in the Persian Gulf region.

 

 

KEITH W. ALLEN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board R. Erdheim

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.