﻿Citation Nr: AXXXXXXXX
Decision Date: 03/18/19 Archive Date: 03/18/19

DOCKET NO. 181105-847
DATE: March 18, 2019

ORDER

Entitlement to an initial disability rating of 60 percent, but no higher, for arthritis and IVDS of the low back is GRANTED, effective from December 5, 2008. 

Entitlement to an initial disability rating greater than 10 percent for radiculopathy of the left lower extremity is DENIED. 

Entitlement to an initial disability rating greater than 10 percent for radiculopathy of the right lower extremity is DENIED. 

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities, prior to October 6, 2016, is GRANTED, effective from January 11, 2013.

FINDINGS OF FACT

1. As of December 5, 2008, the Veteran’s IVDS and arthritis of the low back is productive of incapacitating episodes having a total duration of at least at least 6 weeks during any 12-month period. This is the maximum schedular rating available for incapacitating episodes. However, the Veteran’s low back disability is not productive of favorable or unfavorable ankylosis in any segment of the spine. 

2. The 60 percent rating the Board is assigning in the present decision for low back IVDS based on the Veteran’s incapacitating episodes under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, is greater than the combined 50 percent rating for the Veteran’s orthopedic and neurologic manifestations of IVDS under the General Rating Formula for Diseases and Injuries of the Spine. 

3. The Veteran has at most “mild” radiculopathy in the right and left lower extremity, associated with his service-connected low back IVDS disability.

4. Based on the Board’s award in the present decision of a higher initial 60 percent rating for IVDS, prior to October 6, 2016, the Veteran is service-connected for the following disability: low back IVDS and arthritis and radiculopathy of the lower extremities, rated as 60 percent disabling for incapacitating episodes. The combined service-connected disability rating is 60 percent under the combined ratings table. Therefore, prior to October 6, 2016, for the time period on appeal, the schedular percentage criteria for TDIU are met (under the combined rating table). 

5. Effective January 11, 2013, the Veteran’s service-connected low back IVDS and closely associated radiculopathy disabilities, standing alone, prevent him from securing or following a substantially gainful occupation, consistent with his vocational and educational background. 

CONCLUSIONS OF LAW

1. Effective December 5, 2008, the criteria are met for a higher initial disability rating of 60 percent, but no greater, for IVDS and arthritis of the low back. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.21, 4.25, 4.26, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5243 (2018).

2. The criteria are not met for an initial disability rating greater than 10 percent for radiculopathy of the left lower extremity. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.21, 4.120, 4.123, 4.124, 4.124a, Diagnostic Code 8520 (2018). 

3. The criteria are not met for an initial disability rating greater than 10 percent for radiculopathy of the right lower extremity. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1-4.14, 4.21, 4.120, 4.123, 4.124, 4.124a, Diagnostic Code 8520 (2018). 

4. Effective January 11, 2013, the criteria are met for entitlement to a TDIU. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.340, 3.341, 4.1, 4.3, 4.16, 4.19, 4.25 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The Veteran had active duty service from December 1974 to January 1977 in the United States Marine Corps. 

This matter originally comes to the Board of Veterans’ Appeals (Board) on appeal from a September 2016 rating decision issued by the Agency of Original Jurisdiction (AOJ).

However, per the RAMP program, in June 2018 the Veteran selected the Higher-Level Review (HLR) lane when he submitted a RAMP opt-in election form. The AOJ responded with an August 2018 RAMP rating decision for his increased rating claims, considering all evidence of record as of the date VA received the RAMP election form (June 7, 2018). The Veteran timely appealed the RAMP rating decision with a November 2018 Notice of Disagreement (NOD) for his increased rating claims, requesting the Direct Review docket of the evidence considered by the AOJ. The case has now reached the Board as a RAMP appeal on the Direct Review docket for the increased rating issues. 

In addition, with regard to the TDIU issue, during the course of the initial rating appeal, the AOJ granted the Veteran a TDIU, effective October 6, 2016. See December 2016 rating decision. However, the record contains evidence and allegations of unemployability due to the Veteran’s service-connected disabilities prior to October 6, 2016 (see e.g., March 2013 Social Security Administration (SSA) disability records; August 2016 TDIU application (VA Form 21-8940)). As such, a request for TDIU was reasonably raised by the record for this earlier period of time. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009) (a request for a TDIU, whether expressly raised by Veteran or reasonably raised by the record, is not a separate “claim” for benefits, but rather, can be part and parcel of a claim for an initial rating or increased rating for a disability). Therefore, the issue of entitlement to a TDIU has been added to the present appeal, and the period on appeal for the Rice TDIU will mirror the period on appeal for the related increased rating claims. 

(The Board sees no additional evidence was submitted or received subsequent to the date of the June 7, 2018 RAMP opt-in election form or subsequent to the August 2018 RAMP rating decision. Thus, all evidence of record can be considered by the Board in the present case). 

In July 2011, the Veteran testified at a hearing before a Decision Review Officer (DRO hearing). A transcript of that hearing is associated with the claims file. 

VA’S DUTY TO NOTIFY AND ASSIST

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA’s duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (2012); Honoring America’s Veterans and Caring for Camp Lejeune Families Act of 2012, Pub. L. No. 112-154, §§ 504, 505, 126 Stat. 1165, 1191-93; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2018). As to the duty to notify, the Veteran was provided adequate notice for his increased rating and TDIU claims in December 2008 and August 2016 VCAA letters from the AOJ. 

It is well established that a claimant who disagrees with an initial evaluation or files a claim for an increased evaluation is presumed to be seeking the highest evaluation available. See Breniser v. Shinseki, 25 Vet. App. 64, 79 (2011) (citing AB v. Brown, 6 Vet. App. 35, 38 (1993). However, the Veteran can also expressly indicate or limit the evaluation he seeks. AB, 6 Vet. App. at 38-39. In light of this caselaw, in the Board decision below, the Board has granted in full the following claims at issue: an increased rating in excess of 20 percent for IVDS of the lumbar spine, and entitlement to a TDIU prior to October 6, 2016. Therefore, with respect to these particular claims, the benefits sought on appeal have been granted in full. 

That is, here, in the January 2019 attorney brief, the Veteran through his attorney has requested a 40 percent rating for his IVDS due to incapacitating episodes. In an earlier October 2016 Notice of Disagreement (NOD), the Veteran requested a higher 60 percent rating for his IVDS due to incapacitating episodes. In any event, in the present decision, the Board has granted the highest available 60 percent rating under the Formula for Rating IVDS Based on Incapacitating Episodes for Diagnostic Code 5243. For the TDIU issue, in the January 2019 attorney brief, the Veteran through his attorney pointed out the Veteran could no longer sustain full-time employment primarily due to his low back at an earlier date - January 2013 (according to a disability determination of the SSA). In the present decision, the Board has granted the Veteran a TDIU, effective from this earlier date - January 11, 2013. This is the same disability date the SSA assigned, and the same date requested by the Veteran and his attorney. Neither the Veteran nor his attorney have requested an even earlier effective date for his TDIU. 

Accordingly, regardless of whether the notice and assistance requirements have been met with regard to the low back IVDS and TDIU issues, no harm or prejudice to the Veteran has resulted, as the Veteran has been fully granted the benefits he sought. See, e.g., Bernard v. Brown, 4 Vet. App. 384 (1993); 38 C.F.R. § 20.1102 (harmless error); VAOPGCPREC 16-92.

For the increased rating issues being denied in the present decision – specifically for radiculopathy in each lower extremity in excess of 10 percent, the Board acknowledges that in the January 2019 attorney brief, the Veteran through his attorney alleged that the September 2016 and December 2016 VA examinations for radiculopathy were inadequate. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran’s attorney argued that the September 2016 and December 2016 VA examinations were inadequate because the VA examiners failed to sufficiently address the earlier favorable evidence of higher radiculopathy ratings contained in a November 2015 Independent Medical Examination of Dr. J.W.E., MD. As such, the Veteran has requested that the Board remand the radiculopathy issues on appeal for a new VA examination to rate the current severity of his service-connected lower extremity radiculopathy disabilities. 

The Board concludes a remand is not warranted. The Board finds that the VA examinations obtained in September 2016 and December 2016 are adequate, as they are predicated on a review of the Veteran’s medical history as well as on an examination and fully address the rating criteria that are relevant to rating the disabilities in this case. Moreover, there is no probative evidence of record indicating that there has been a material change in the severity of the Veteran’s service-connected disabilities since he was last examined by VA examiners in 2016. 38 C.F.R. § 3.327(a). In fact, VA treatment records dated in 2017 and 2018 do not reveal any worsening of his lower extremity radiculopathy disabilities. An April 2018 VA neurology consult assessment demonstrated a normal neurological examination of the lower extremities. In addition, during a May 2018 VA gastroenterology consult, the Veteran denied any weakness in his lower extremities. On examination in May 2018, the following assessments were made for the lower extremities - intact strength, normal sensation, good pulses, no clubbing, and no edema. The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95.

The Board has also considered the contention from the Veteran’s attorney that the September 2016 and December 2016 VA examinations were inadequate because the VA examiners failed to sufficiently address the earlier favorable evidence of higher radiculopathy ratings contained in a November 2015 Independent Medical Examination of Dr. J.W.E., MD. 

However, contrary to this line of argument by the Veteran’s attorney, there is no authority for the proposition that in order for a medical opinion to be considered adequate the VA examiner must discuss the evidence favorable to a Veteran’s claim. In facts, the courts have held that a VA medical examiner, unlike the Board, is not required to provide a detailed review of the medical history, or comment on every piece of favorable evidence in the record. Monzingo v. Shinseki, 26 Vet. App. 97, 105-107 (2012). See also Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012) (noting that VA examiners do not have a reasons or bases requirement). Stated another way, weighing of the evidence by the VA examiner is not required. Thompson v. Gober, 14 Vet. App. 187, 188 (2000). Instead, it is the Board’s duty to weigh and evaluate the evidence of record. See Washington v. Nicholson, 19 Vet. App. 362, 366–67 (2005). It appears the Veteran’s attorney may be conflating the reasons and bases responsibilities of the AOJ and the Board with that of the VA medical examiner. See Moore v. Nicholson, 21 Vet. App. 211, 218 (2007) (“it is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present.”), rev’d on other grounds sub nom. Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009); Roberson v. Shinseki, 22 Vet. App. 358, 366 (2009) (“A medical examiner need not discuss all evidence favorable to an appellant’s claim when rendering an opinion.”). 

In denying the increased rating claims for radiculopathy in excess of 10 percent in the present decision, as explained below, the Board has fully considered and analyzed the Veteran’s signs and symptoms of his radiculopathy in both his private and VA treatment records and in his examinations and in his lay statements. It is the Board’s duty to weigh the evidence and support its findings with an adequate statement of reasons and bases. Webster v. Derwinski, 1 Vet. App. 155, 159 (1991).

The Board is therefore satisfied that the VA has provided the Veteran all assistance required by the VCAA. 38 U.S.C. § 5103A. Hence, there is no error or issue that precludes the Board from addressing the merits of all increased rating and TDIU issues on appeal. 

INCREASED RATING

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. 38 C.F.R. § 4.7. 

The Board must also assess the competence and credibility of lay statements and testimony. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). In increased rating claims, a Veteran’s lay statements alone, absent a negative credibility determination, may constitute competent evidence of worsening, at least with respect to observable symptoms. See Vazquez-Flores v. Shinseki, 24 Vet. App. 94, 102 (2010), rev’d on other grounds by Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (Fed. Cir. 2009). The Veteran is uniquely suited to describe the severity, frequency, and duration of his service-connected low back and lower extremity radiculopathy disabilities. See Falzone v. Brown, 8 Vet. App. 398 (1995); Heuer v. Brown, 7 Vet. App. 379 (1995). 

When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3. 

1. Entitlement to an initial disability rating greater than 20 percent for arthritis and IVDS of the low back from December 5, 2008 (date of initial rating claim) to June 7, 2018 (date of receipt of RAMP opt-in election form). 

The AOJ assigned a 20 percent rating for the Veteran’s low back IVDS and arthritis under Diagnostic Code 5243 (IVDS). 38 C.F.R. § 4.71a (2018). This 20 percent rating has been in effect since December 5, 2008, the day the Veteran’s original service connection claim was received. 

In denying an initial rating above 20 percent, the AOJ found that the Veteran’s low back IVDS exhibited combined range of motion of the thoracolumbar spine not greater than 120 degrees; forward flexion of the thoracolumbar spine in between 30 and 60 degrees; no incapacitating episodes (the requirement of bedrest by a physician); and no ankylosis. 

The Veteran filed his initial rating claim for a low back disability on December 5, 2008. The Veteran believes that his low back is much worse than rated. The Veteran contends that he should be assigned at least a 40 percent rating for his service-connected low back IVDS disability. He believes at least a 40 percent rating is appropriate throughout the appeal period because he exhibits the following symptomatology: frequent incapacitating episodes of at least five weeks per year, and also functional loss during flare-ups or upon repeated use of the low back, which reduces his range of motion for flexion to 30 degrees or less. See October 2016 NOD; August 2018 HLR Informal Conference Worksheet; January 2019 attorney brief. 

The Veteran has appealed the original September 2016 rating decision that granted service connection for his IVDS and arthritis of the low back. He has expressed disagreement with the initial 20 percent rating assigned since December 5, 2008. Thus, this case could result in “staged ratings” based upon the facts found during the period in question. See Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999). The relevant time period for consideration in a claim for an increased initial disability rating is the period beginning on the date that the claim for service connection was filed. Moore v. Nicholson, 21 Vet. App. 211, 216-17 (2007). That is to say, the Board must consider whether there have been times since the effective date of his award when his low back IVDS and arthritis has been more severe than at others for the time period from December 5, 2008 to the present. Id. 

However, the Board is cognizant that 38 C.F.R. §§ 4.1 and 4.2 and 4.41 require VA adjudicators to view each disability “in relation to its history” to “accurately reflect the elements of disability present,” respectively. See Jones v. Shinseki, 26 Vet. App. 56, 62 (2012); see also Moore v. Shinseki, 555 F.3d 1369, 1373 (Fed. Cir. 2009) (discussing 38 C.F.R. §§ 4.1 and 4.2 and stating that, although the veteran was “only entitled to disability compensation for the period after … the date he filed his original claim for benefits,” VA regulations still require the disability to be “evaluated in light of its whole recorded history”). In Schafrath v. Derwinski, the CAVC explained, “These requirements for evaluation of the complete medical history of the claimant’s condition operate to protect claimants against adverse decisions based on a single, incomplete or inaccurate report and to enable VA to make a more precise evaluation of the level of the disability and of any changes in the condition.” 1 Vet. App. 589, 594 (1991).

The criteria for spine disorders were amended in September 2002 and again in September 2003. See 67 Fed. Reg. 54,345 54,349 (Aug. 22, 2002); 68 Fed. Reg. 51,454 (Aug. 27, 2003). In this case, the Veteran’s initial rating claim for the low back was received by the AOJ on December 5, 2008, which was subsequent to the final amendments. Thus, only the most current version of the rating criteria (i.e., the September 2003 amendments) is for application. 38 U.S.C. § 5110(g); VAOPGCPREC 3-2000. See Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003); VAOPGCPREC 7-2003. 

The September 2003 amendments indicate that IVDS, (preoperatively or postoperatively) can be evaluated under either (1) the General Rating Formula for Diseases and Injuries of the Spine, or (2) the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25.

The Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes is as follows:

A 20 percent rating requires evidence of incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. 

A 40 percent rating requires evidence of incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. 

A 60 percent rating requires evidence of incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 

Note 1: For purposes of evaluations under Diagnostic Code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 

Note 2: If intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, each segment will be evaluated on the basis of incapacitating episodes or under the General Rating Formula for Diseases and Injuries of the Spine, whichever method results in a higher evaluation for that segment. 

38 C.F.R. § 4.71a, Diagnostic Code 5243 (in effect after September 26, 2003).

Upon review, the evidence of record is supportive of a higher initial 60 percent rating, but no greater, for the Veteran’s low back IVDS and arthritis. 38 C.F.R. § 4.7. This 60 percent rating is effective under Diagnostic Code 5243 due to probative medical and lay evidence of record of incapacitating episodes under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. Throughout the entire appeal period from December 5, 2008 to June 7, 2018, the Veteran has experienced on average incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. This is the maximum rating available for incapacitating episodes under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 

The evidence is either directly or circumstantially supportive of a higher 60 percent rating for low back IVDS with radiculopathy, based on the frequency of incapacitating episodes. At an August 2009 private initial consult, the Veteran credibly reported “constant” waxing and waning stiffness / burning of the left low back with involvement of the left lower extremity diffusely – the “whole leg.” The impression was a chronic low back condition with sciatica suggestive of a neuropathic component. Importantly, episodic flares occurred approximately two times per month, lasting days at a time. In other records the Veteran described these flare-ups as being incapacitating, requiring that he lie down. These low back flare-ups occurring twice a month but lasting at a minimum of two days a time would equate to 6.8 weeks per year of incapacitating episodes, or a 60 percent rating under Diagnostic Code 5243. 

Throughout 2009, VA treatment records documented that the Veteran’s low back disability was “severe.” 

VA primary care physician notes dated in November 2009, October 2010, January 2011, February 2011, June 2011, September 2011, October 2012, February 2013, and June 2013, repeatedly document chronic, severe low back pain, worsening with left leg weakness and radicular pain at times. He has trouble walking very far. He uses a cane and a TENS unit. He has pain with driving. He is unable to sit for over 15 minutes. He is unable to walk for over one hour without pain, unable to bend over, and unable to stand for over 30 minutes. 

Jun 2011 Interrogatories of Dr. N.M., MD., involved a review of medical records, clinical observations, and the Veteran’s treatment history. Dr. N.M. examined the Veteran. Dr. N.M. concluded the Veteran has incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months for the lumbar spine – so in this instance at least 40 percent disabling under Diagnostic Code 5243.

At the July 2011 DRO hearing, the Veteran emphasized he was requesting at least a 40 percent rating under Diagnostic Code 5243 for incapacitating episodes of the low back. He walks with a cane and uses a TENS unit and prescription pain medication. He misses about four days per month (once a week) from work due to incapacitating episodes of the low back. It is becoming more and more difficult to work. This would equate to 6.8 weeks per year of incapacitating episodes, or a 60 percent rating under Diagnostic Code 5243. During his incapacitating episodes, the Veteran credibly reported that he has to lie down in bed or on a recliner to take weight of his painful spine. The Board finds the Veteran both competent and credible in his description of the frequency and duration of his incapacitating episodes. See 38 C.F.R. § 3.159(a)(2); Barr v. Nicholson, 21 Vet. App. 303, 307-09 (2007).

In a March 2013 SSA physician statement and a March 2013 SSA residual functional capacity assessment, the SSA physician noted the Veteran missed more than 2 days of work per month due to his “physical impairments” from his low back. The use of a cane was necessary for ambulation due to his low back. He can only walk two blocks after pain sets in. He can only lift five pounds. The Veteran is required to lie down or recline for 1 hour a workday due to low back pain from IVDS. This would equal 240 hours or 6 weeks per year of incapacitating episodes. 

His IVDS also requires the Veteran to lie down or recline in a chair for a total of 4 hours during a workday due to fatigue in his low back. This is equivalent to over 6 weeks per year of incapacitating episodes, or a 60 percent rating under Diagnostic Code 5243. 

A January 2015 VA neurology consult diagnosed the Veteran with degenerative lumbar disc disease, lumbar spondylosis, and chronic low back and radicular pain related to both. When he experiences incapacitating episodes, only lying down brings him relief from the “severe” low back discomfort, especially in a massage chair he keeps at home. Upon examination, it was observed the Veteran was “very shaky and wobbly” during tandem walking. Anti-inflammatories, heat, massage, and lying down were recommended upon flare-ups of his low back. 

A November 2015 Independent Medical Examination noted the Veteran had chronic low back pain. It is because of his low back pain that he is unable to work and have gainful employment at present. The Veteran continues to require a TENS unit and physical therapy on a regular basis. He uses a cane and must take Neurontin along with pain and anti-inflammatory medications on a regular basis. He can only wear slip on shoes because he is unable to bend over and put on anything that requires him to stay in a crouched position. He has “severe” trouble with all his activities of daily living that require any type of prolonged sitting, standing, bending, stooping, squatting, and kneeling. Upon examination, the Veteran had tenderness to palpation throughout the entire thoracolumbar spine with muscle spasms observed. But most importantly, this private examiner filled out a VA Joint Range of Motion Worksheet, concluding the Veteran deserves a 60 percent rating for incapacitating episodes for 6+ weeks in the past year under Diagnostic Code 5243. The Board finds this particular assessment has support in the record. 

In VA treatment records dated throughout 2016, the Veteran frequently reported low back pain at a 9/10 level. He ambulates with a cane due to his low back. 

In his October 2016 NOD, the Veteran emphasized that the evidence of record established 6 or more weeks per year of incapacitating episodes due to his low back IVDS disability, supportive of a 60 percent rating under Diagnostic Code 5243.

Therefore, the evidence above supports on average incapacitating episodes having a total duration of at least 6 weeks during the past 12 months, indicative of a 60 percent rating under Diagnostic Code 5243. The Board acknowledges that there is some evidence of record suggesting a lesser frequency (4 week per year) of incapacitating episodes. In addition, the Veteran’s orthopedic manifestations of his IVDS (range of motion and pain on motion) were often not severely limited, even though pain was always present. In fact, VA spine examiners in August 2011, September 2016, and December 2016 even determined that the Veteran had neither IVDS nor incapacitating episodes. (But the VA examiners provided no rationale and no relevant discussion of incapacitating episodes). Moreover, the Veteran is already service-connected by VA for IVDS. Thus, these negative findings are unsupported much of the clinical and lay evidence discussed above. 

In light of the above, effective December 5, 2008, the preponderance of the evidence is in favor of a 60 percent rating, but no higher, for incapacitating episodes due to IVDS and arthritis of the low back under Diagnostic Codes 5243. 38 C.F.R. § 4.3.

However, with regard to orthopedic manifestations of the lumbar spine with consideration of functional loss (38 C.F.R. §§ 4.40, 4.45, 4.59), the evidence of record does not reveal unfavorable ankylosis of the entire spine warranting a higher 100 percent evaluation, or unfavorable ankylosis of the entire thoracolumbar spine warranting a 50 percent evaluation, or even favorable ankylosis of the entire thoracolumbar spine warranting a 40 percent evaluation. 38 C.F.R. § 4.71a. Ankylosis is defined as “immobility and consolidation of a joint due to disease, injury, surgical procedure.” Lewis v. Derwinski, 3 Vet. App. 259 (1992) (citing Saunders Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health at 68 (4th ed. 1987)); Dinsay v. Brown, 9 Vet. App. 79, 81 (1996) (Ankylosis is “stiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint,” citing Stedman’s Medical Dictionary 87 (25th ed. 1990)). There is no diagnosis of ankylosis in any segment of the spine in the evidence of record and range of motion findings, although limited at times, are not equivalent to favorable or unfavorable ankylosis. In fact, even when considering functional loss and repetition x 3, flexion was never documented to be 30 degrees or less. VA, private, and SSA clinical records and examinations dated from 2008 to 2018 contain no findings of ankylosis. No X-rays or MRIs of record showed ankylosis of the spine. In fact, the September 2016 and December 2016 VA spine examiners specifically found no evidence of thoracolumbar spine ankylosis. In addition, the Veteran and his attorney’s lay statements do not assert a diagnosis of ankylosis or findings more nearly approximating ankylosis. The Board has considered the Veteran’s limited motion, and other functional impairments that he exhibits in making this determination. Nonetheless, it is apparent from the evidence of record that the Veteran’s thoracolumbar spine is not fixated or immobile with fibrous or bony union. Therefore, a higher rating is not warranted for the Veteran’s low back IVDS due to orthopedic manifestations of his low back disability under the General Rating Formula for Diseases and Injuries of the Spine. 

In assigning the above 60 percent initial rating for incapacitating episodes, the Board is aware that under 38 C.F.R. § 4.71a, Diagnostic Code 5243, the Veteran’s IVDS (preoperatively or postoperatively) is evaluated under the General Rating Formula for Diseases and Injuries of the Spine, or under the Formula for Rating IVDS Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. 

In this regard, the General Rating Formula for Diseases and Injuries of the Spine encompasses both orthopedic and neurological manifestations of a low back disability. In other words, a veteran can receive separate ratings for both orthopedic and neurological manifestations of a spine disability under this particular rating formula. That is, Note (1) to the General Rating Formula for Diseases and Injuries of the Spine advises: Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. Moreover, the Court has held that neurological symptoms of the lumbar spine can warrant separate disability ratings under the diagnostic codes pertinent to rating neurological disorders. Bierman v. Brown, 6 Vet. App. at 129-132 (1994). 

The previous September 2002 amendments for IVDS under Diagnostic Code 5293 similarly emphasized that IVDS is evaluated either on the basis of incapacitating episodes or by combining under 38 C.F.R. § 4.25 (the combined rating table) separate evaluations of the chronic orthopedic and neurologic manifestations of IVDS, along with evaluations for all other disabilities, whichever method results in the higher evaluation. This interpretation of Diagnostic Code 5243 is important to the determination of the correct rating in the present case, as incapacitating episodes, orthopedic manifestations, and neurologic manifestations are all associated with the Veteran’s service-connected low back IVDS in the present case. 

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 60 percent rating is warranted for the Veteran’s IVDS based on his incapacitating episodes, as discussed in great detail above.

Under the General Rating Formula for Diseases and Injuries of the Spine, orthopedic manifestations of IVDS are at the most 40 percent disabling due to functional loss causing range of motion (flexion) limited to 30 degrees or less, during flare-ups and during repetitive use in a functional setting. See 38 C.F.R. §§ 4.40, 4.45, 4.59; Sharp v. Shulkin, 29 Vet. App. 26, 33 (2017); DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). And neurologic manifestations of the Veteran’s IVDS (as will be discussed below) are each 10 percent and 10 percent for right and left lower extremity radiculopathy. When combining these orthopedic and neurologic manifestations for IVDS in accordance with 38 C.F.R. §§ 4.25 and 4.26 (the combined rating table and bilateral factor) – 40 percent and 10 percent and 10 percent combines to only a 50 percent rating for IVDS under the General Rating Formula for Diseases and Injuries of the Spine.

In short, the 60 percent rating for IVDS based on the Veteran’s incapacitating episodes under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, is greater than the combined 50 percent rating for the Veteran’s orthopedic and neurologic manifestations of IVDS under the General Rating Formula for Diseases and Injuries of the Spine. The Board cannot assign both – it is one or the other according to 38 C.F.R. § 4.71a, Diagnostic Code 5243. In the present case, the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes results in the greater 60 percent evaluation when all disabilities are combined under 38 C.F.R. § 4.25.

Accordingly, effective December 5, 2008, the evidence supports an initial 60 percent combined disability rating, but no greater, for the Veteran’s low back IVD and arthritis. 38 C.F.R. § 4.3. 

(When assigning this combined 60 percent rating for IVDS, the AOJ is advised that the Veteran cannot be assigned his additional 10 percent ratings for his right and left lower extremity radiculopathy. This is because in the Veteran’s particular case, when all disabilities are combined under 38 C.F.R. § 4.25, the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes results in the greater 60 percent evaluation, whereas the combination of his orthopedic and neurological manifestations of his IVDS only results in a lesser 50 percent evaluation (40 percent and 10 percent and 10 percent). But if in the future the Veteran’s combined orthopedic and neurological manifestations of his IVDS worsens, the method of evaluation of his IVDS disability can be reassessed). 

With regard to the potential for an extraschedular rating under 38 C.F.R. § 3.321(b)(1), the Board has considered the contention from the Veteran’s attorney that the Veteran is entitled to a higher rating for his low back on an extraschedular basis. See January 2019 attorney brief. In this vein, the Board must discuss the issue of entitlement to an extraschedular rating, if the claimant alleges entitlement or the issue is raised by the evidence of record. Doucette v. Shulkin, 38 Vet. App. 366, 369-70 (2017); Yancy v. McDonald, 27 Vet. App. 484 (2016). 

The “determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b)(1) is a three-step inquiry.” Thun v. Peake, 22 Vet. App. 111, 115-116 (2008). If the RO or Board determines that (1) the schedular evaluation does not contemplate the claimant’s level of disability and symptomatology, and (2) the disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization, then (3) the case must be referred to an authorized official to determine whether, to accord justice, an extra-schedular rating is warranted. Id. See also 38 C.F.R. § 3.321(b)(1). Neither the AOJ nor the Board is permitted to assign an extraschedular rating in the first instance; rather the matter must initially be referred to those officials who possess the delegated authority to assign such a rating. See Anderson v. Shinseki, 22 Vet. App. 423, 427-8 (2009); Floyd v. Brown, 9 Vet. App. 88, 96-97 (1996). 

In the present case, the Veteran argues he is entitled to an extraschedular rating under 38 C.F.R. § 3.321(b)(1) for his low back disability for the following reasons: the schedular rating standards are inadequate in rating his low back disability; he is not adequately compensated for his impairment in earning capacity for the low back; and his low back disability with incapacitating episodes causes marked interference with employment, not accounted for in his current 60 percent rating. See January 2019 attorney brief.

However, the Board finds that these arguments are flawed. All of the Veteran’s symptomatology for his low back disability is fully addressed by the rating criteria under which such disability is rated – Diagnostic Code 5243. 38 C.F.R. § 3.321(b)(1). This is because the Diagnostic Code 5243 and the rating criteria for the spine contemplate incapacitating episodes, diminished range of motion, pain, fatigue, weakness, and many other factors of functional loss to include limits on certain activities, difficulty sitting, difficulty standing, and difficulty lifting. In fact, the Veteran’s increased evaluation assigned herein for 60 percent is based, in part, on such additional functional loss during incapacitating episodes. Both the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes and the General Rating Formula for Diseases and Injuries of the Spine consider a broad array of symptomatology for the spine. 

Because the rating criteria reasonably describe the claimant’s disability level and symptomatology for his low back disability, the Veteran’s disability picture is contemplated by the Rating Schedule, such that the assigned 60 percent schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111, 115-116 (2008); VAOPGCPREC 6-96; 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). And although the Veteran’s low back disability interferes with his employment, such interference is contemplated by the 60 percent schedular rating criteria for which he has been granted for his thoracolumbar spine disability. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. In short, there is no unusual or exceptional disability picture for the low back that would render impractical the application of the normal Rating Schedule. 

In the present case, the first threshold step of Thun is not met, in that the available schedular criteria for the low back are adequate to rate all of the Veteran’s low back signs and symptoms. Thus, there is no need to consider whether there are “related factors” such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board’s finding that the rating criteria were adequate to evaluate the claimant’s disability was a sufficient basis for denying extra-schedular consideration without regard to whether there was marked interference with employment); Doucette v. Shulkin, 38 Vet. App. 366 (2017) (if Thun element one is not satisfied, the Board does not need to analyze Thun element two). 

In conclusion, the Board finds that referral for an extraschedular evaluation for the Veteran’s service-connected low back disability on appeal under the provisions of 38 C.F.R. § 3.321(b)(1), is not warranted. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App. 111 (2008).

2. Entitlement to initial disability ratings greater than 10 percent for radiculopathy of the right and left lower extremities from December 5, 2008 (date of initial rating claim) to June 7, 2018 (date of receipt of RAMP opt-in election form). 

The AOJ assigned 10 percent ratings each for the Veteran’s radiculopathy of the right and left lower extremities under Diagnostic Code 8520 (paralysis or incomplete paralysis of the sciatic nerve). 38 C.F.R. § 4.124a (2018). These 10 percent ratings have been in effect since December 5, 2008, the day the Veteran’s original service connection claim was received. 

In denying initial ratings above 10 percent for radiculopathy, the AOJ found that the Veteran’s radiculopathy in each lower extremity, associated with his service-connected low back IVDS, exhibited “mild” incomplete paralysis in the sciatic nerve. A higher evaluation of 20 percent was denied because the incomplete paralysis of the sciatic nerve was not shown cause to cause “moderate” nerve damage in the lower extremities. 

The Veteran filed his initial rating claim for his radiculopathy in the lower extremities on December 5, 2008. The Veteran believes that his radiculopathy in the lower extremities is much worse than rated. The Veteran contends that he should be assigned a higher 40 percent rating for “moderately severe” neurological impairment in the left lower extremity, and a higher 60 percent rating for “severe” neurological impairment in the right lower extremity. See October 2016 NOD; May 2018 VA Form 9; August 2018 HLR Informal Conference Worksheet; January 2019 attorney brief. 

The Veteran has appealed the original September 2016 rating decision that granted service connection for his radiculopathy in both lower extremities. He has expressed disagreement with the initial 10 percent ratings assigned since December 5, 2008. Thus, this case could result in “staged ratings” based upon the facts found during the period in question. See Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999). The relevant time period for consideration in a claim for an increased initial disability rating is the period beginning on the date that the claim for service connection was filed. Moore v. Nicholson, 21 Vet. App. 211, 216-17 (2007). That is to say, the Board must consider whether there have been times since the effective date of his awards when his radiculopathy in the lower extremities has been more severe than at others for the time period from December 5, 2008 to the present. Id. 

However, the Board is cognizant that 38 C.F.R. §§ 4.1 and 4.2 and 4.41 require VA adjudicators to view each disability “in relation to its history” to “accurately reflect the elements of disability present,” respectively. See Jones v. Shinseki, 26 Vet. App. 56, 62 (2012); see also Moore v. Shinseki, 555 F.3d 1369, 1373 (Fed. Cir. 2009) (discussing 38 C.F.R. §§ 4.1 and 4.2 and stating that, although the veteran was “only entitled to disability compensation for the period after … the date he filed his original claim for benefits,” VA regulations still require the disability to be “evaluated in light of its whole recorded history”). In Schafrath v. Derwinski, the CAVC explained, “These requirements for evaluation of the complete medical history of the claimant’s condition operate to protect claimants against adverse decisions based on a single, incomplete or inaccurate report and to enable VA to make a more precise evaluation of the level of the disability and of any changes in the condition.” 1 Vet. App. 589, 594 (1991).

Under Diagnostic Code 8520, mild incomplete paralysis of the sciatic nerve, as well as neuritis and neuralgia of that nerve, warrants a 10 percent rating. Moderate incomplete paralysis is assigned a 20 percent rating, and moderately severe incomplete paralysis is warranted for a 40 percent rating. Severe incomplete paralysis of the sciatic nerve with marked muscular atrophy warrants a 60 percent rating. With complete paralysis of the sciatic nerve, which warrants an 80 percent rating, the foot dangles and drops, there is no active movement possible of muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. 38 C.F.R. § 4.124a.

Under 38 C.F.R. § 4.124a, disability from neurological disorders is rated from 10 to 100 percent in proportion to the impairment of motor, sensory, or mental function. With partial loss of use of one or more extremities from neurological lesions, the rating is to be by comparison with mild, moderate, severe, or complete paralysis of the peripheral nerves. 

In rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury, the relative impairment and motor function, trophic changes, or sensory disturbances. Special consideration should be given to any psychotic manifestations, complete or partial loss of use of one or more extremities, speech disturbances, impairment of vision, disturbances of gait, tremors, visceral manifestations, and injury to the skull. 38 C.F.R. § 4.120. 

The term “incomplete paralysis” indicates a degree of lost or impaired function substantially less than the type of picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is only sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a. But under recent caselaw, “[a]lthough the note preceding § 4.124a directs the claims adjudicator to award no more than a 20% disability rating for incomplete paralysis of a peripheral nerve where the condition is productive of wholly sensory manifestations, it does not logically follow that any claimant who also exhibits non-sensory manifestations must necessarily be rated at a higher level.” Miller v. Shulkin, 28 Vet. App. 376, 380 (2017).

In rating peripheral nerve disability, neuritis, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete paralysis. The maximum rating to be assigned for neuritis not characterized by organic changes referred to in this section will be that for moderate incomplete paralysis, or with sciatic nerve involvement, for moderately severe incomplete paralysis. 38 C.F.R. § 4.123. 

Neuralgia, cranial or peripheral, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, can receive a maximum rating of moderate incomplete paralysis, except for tic douloureux or trifacial neuralgia, which may be rated up to complete paralysis. 38 C.F.R. § 4.124. 

The words “mild,” “moderate” and “severe” as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. It should also be noted that use of terminology such as “severe” by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6. 

Upon review, the evidence of record does not warrant ratings in excess of 10 percent each for the Veteran’s right and left lower extremity sciatic nerve radiculopathy. 38 C.F.R. § 4.7. In other words, the medical and lay evidence of record does not establish neurological manifestations consistent with moderate, moderately severe, severe, or complete paralysis radiculopathy of the right and left lower extremity in the sciatic nerve. Rather, the Veteran’s lay statements and the medical evidence of record from December 5, 2008 to June 7, 2018 document that there was no atrophy, no abnormal muscle tone or bulk, no complete paralysis, no organic changes, no bowel or bladder problems (as the result of his radiculopathy), and no foot drop of either the right or left lower extremity. 

At the outset, in making this determination denying ratings in excess of 10 percent, the Board acknowledges there were instances of diminished reflexes or loss of motor strength in the lower extremities, but these signs were not constant. That is, an April 2009 Select Physical Therapy report documented lower extremity muscle strength for the left hip was diminished at 3/5. By April 2009 the lower extremity muscle strength for the left hip increased to 4/5 after physical therapy. An August 2009 private initial consult documented waxing / waning pain, stiffness, and burning in the left lower extremity with episodic flares. The Veteran reported “vague” left lower extremity weakness. VA primary care physician noted dated from 2009 to 2013 documented left leg weakness and radicular pain at times. A November 2009 VA primary care visit revealed 4/5 strength in the left leg – with weakness. A November 2009 VA nurse practitioner note observed positive straight leg raising test on the left. A January 2010 VA neurology consult elicited ankle jerks 1+ (diminished reflexes in that joint). There was a notation in this consult of intermittent pain and numbness that radiates down his left leg, but becoming continuous the past year. At an August 2011 VA spine examination, the Veteran reported numbness radiating to the left lower extremity to the toes. A January 2015 VA neurology consult assessed that bilateral ankle jerks were absent. A September 2016 VA examiner observed hypoactive 1+ reflexes in the ankles (this VA examiner still assessed the radiculopathy as “mild.”). In any event, to the extent that the Veteran asserts that he is entitled to a rating of at least moderate or moderately severe as there is more than sensory involvement, the Board finds that this argument fails. Miller, 28 Vet. App. at 380. As will be discussed below, the Board has considered unfavorable evidence of record with regard to the frequency, severity, and duration of the above neurological signs and symptoms. 

The Board also acknowledges that a private physician at a November 2015 Independent Medical Examination opined that the Veteran had radiation of pain down his legs with pressure over this region. The Veteran had a positive straight leg raise bilaterally. He had decreased pin prick sensation severely in the right great toe and decreased sensation in the entire right lower extremity. He was able to discern a 6.65 monofilament in his right lower extremity. He was able to discern a 4.56 monofilament in the left lower extremity. This November 2015 private examiner filled out a VA Joint Range of Motion Worksheet surmising the Veteran should be assigned a 40 percent rating for his radiculopathy in the left lower extremity (moderately severe) and a 60 percent rating for his radiculopathy in the right lower extremity (severe) under Diagnostic Code 8520. As a layperson, the Veteran has asserted this level of severity as well. See e.g., August 2018 HLR Informal Conference Worksheet; January 2019 attorney brief. 

But on this issue, an examiner’s clinical assessment of the extent of incomplete paralysis may be inconsistent or contradict other objective findings in the record. The RO or the Board (the rating activity), not the examining medical professional, interprets the medical reports in order to match the rating with the disability. Moore v. Nicholson, 21 Vet. App. 211, 218 (2007). 

In this regard, the November 2015 private examiner provided no clear rationale for his assessment of the severity of the Veteran’s radiculopathy. And the private examiner’s assessment on the severity of the Veteran’s right and left lower extremity radiculopathy is unsupported by the other clinical evidence of record, as detailed below. The probative value of a medical professional’s statement is dependent, in part, upon the extent to which it reflects “clinical data or other rationale to support his opinion.” Bloom v. West, 12 Vet. App. 185, 187 (1999); see also Black v. Brown, 5 Vet. App. 177, 180 (1995). A bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 18, 22 (2007). In addition, a medical opinion must support its conclusions with analysis. Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). “Neither a VA medical examination report nor a private medical opinion is entitled to any weight in a service-connection or rating context if it contains only data and conclusions [without reasoning or rationale].” Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). A review of the claims file cannot compensate for lack of the reasoned analysis required in a medical opinion. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). See also Bloom v. West, 12 Vet. App. 185, 187 (1999). 

In particular, the following evidence of record demonstrates that the Veteran’s radiculopathy symptoms in the lower extremities are only mild (indicative of a 10 percent rating), and do not more nearly approximate moderate incomplete paralysis or worse: 

A February 2009 private examination of Dr. A.B., MD., noted chronic low back pain, but no radicular symptoms at that time. 

An April 2009 Select Physical Therapy report revealed that lower extremity muscle strength for hips ranges from 3/5 for the left to 5/5 for the right in March 2009 and April 2009. “Mild” or “slight” restrictions in the hamstrings were assessed. 

At a June 2009 VA cold weather injury examination, the Veteran was diagnosed with nonservice-connected pes planus of the left foot that caused pain and tenderness on the sole of the left foot when weight bearing. A burning sensation on the lateral aspect of the dorsum of the left foot was documented. But upon examination, reflexes were normal. Sensory was intact. There were no motor problems, no weakness, no atrophy, and no edema. The Veteran had a normal gait and posture. He was in no acute distress. He exhibited no numbness, no paresthesias, normal texture, normal hair growth, and normal strength. Peripheral pulses were intact and equal bilaterally. 

At an August 2009 private initial consult, the Veteran reported no numbness in the lower extremities, only pain and weakness. Upon examination, the motor examination was 5/5, and symmetrical in the bilateral lower extremities through all myotomes. Sensation was intact through all dermatomes. Reflexes were symmetrical 2+ at the knees and ankles. There was a negative Babinski. The extremity distal pulses were intact. 

A November 2009 VA primary care visit revealed 4/5 strength in the left leg – with weakness and sensory loss in the foot. However, deep tendon reflexes were intact. There was no edema. The Veteran had radicular pain with trouble walking very far due to his low back. 

A November 2009 VA nurse practitioner note reflected chronic left back pain that radiates down to the left leg and has flared over the last few weeks. He was diagnosed with radicular symptoms. But there was no change in bowel or bladder habits. On examination, the Veteran was in no acute distress. His neurological examination was “grossly intact.” 

A January 2010 VA neurology consult described the Veteran’s neurological examination as “near normal.” The Veteran reports left leg pain and intermittent numbness. He uses a cane to walk due to his low back. But there is no sensory loss in his legs. He has good control of his bowel and bladder function. In the sitting position, straight leg raising was negative to 90 degrees bilaterally. Upon neurological examination, motor function in the lower extremities for source strength was equal. The Veteran had good quadriceps and hamstring strength on each side. Distally, there was no weakness in dorsi- or plantar flexion of the feet or the toes. Sensory testing to pin prick in trunk, and both lower extremities was normal throughout. Vibratory sense was intact in both lower extremities down the ankles. As to deep tendon reflexes, in the lower extremities, knee jerks were 2+, and ankle jerks were 1+ (diminished) and bilaterally equal. Plantar responses were both downgoing. No pathological reflexes were elicited. Again, the final assessment was “near normal neurological exam.”

The July 2011 DRO hearing testimony of the Veteran was silent as to any discussion of radiculopathy or neuropathy in the lower extremities.

At the August 2011 VA spine examination, the Veteran reported occasional use of a cane. He also credibly reported that numbness radiates to the left lower extremity to the toes. Upon neurological objective testing, there was normal 5/5 strength in all lower extremities, no muscle atrophy, and normal 2+ reflexes in the lower extremities. The sensory examination was also normal in all lower extremities. The straight leg raise was negative. No signs of radiculopathy were noted. There was no bowel or bladder impairment, and no pathologic reflexes. 

A January 2015 VA neurology consult remarked the Veteran had good control of his bowel and bladder function. Upon neurological examination, only ankle jerks were bilaterally absent. Pulses were palpable on the dorsum of his feet. Lower extremity strength was strong. The Veteran had good quadriceps and hamstring strength on each side. Distally there was no weakness in dorsi or plantar flexion of the feet or the toes. Sensory tested to pinprick normal throughout the lower extremities. Vibratory sense was present in the ankles in both lower extremities. Deep tendon reflexes were generally 2+. Lower extremity knee jerks were 2+. Plantar responses were both downgoing. The VA physician concluded there is “no focal neurological deficits or signs of any mechanical nerve root compression.” 

VA primary care physician notes dated in December 2015, April 2016, and August 2016 commented that the Veteran’s neurologic system was “intact.”

At an April 2016 VA physical therapy outpatient initial evaluation consult, the Veteran credibly reported bilateral lower extremity “shooting pain and numbness”, usually distally to the bilateral knees. Upon examination, the Veteran was ambulatory, in no acute distress. Strength was 5/5 in both lower extremities. Balance was normal on sitting and standing. 

An August 2016 VA primary care visit commented the Veteran was in no acute distress and “neurologic intact.”

At a September 2016 VA spine examination, the Veteran reported he uses a cane occasionally if he will walk long distances. Neurologically, the Veteran credibly reported that his low back pain radiates to his legs, especially when seated long periods. He also credibly mentioned numbness in the right great toe. Upon neurological objective testing, the Veteran exhibited normal 5/5 strength in all lower extremities. He had no muscle atrophy. He exhibited normal 2+ reflexes in the knees, but hypoactive 1+ reflexes in the ankles. His sensory examination was normal in all lower extremities. His straight leg raise was negative. The assessment was radiculopathy – “mild dull, intermittent pain and mild right lower extremity numbness.” This involved the sciatic nerve. No loss of use of the lower extremities existed. No bowel or bladder problems, nor pathologic reflexes, were present. 

At the December 2016 VA spine DBQ examination, the Veteran reported regular use of a cane when outside and not at home. Upon neurological objective testing, the Veteran exhibited normal 5/5 strength in all lower extremities, with no muscle atrophy. There were normal 2+ reflexes in both knees and ankles. The sensory examination was normal in all lower extremities. The straight leg raise was negative. The assessment was no radiculopathy or radicular pain at that examination for the sciatic nerve. No loss of use of the lower extremities existed. No bowel or bladder problems, nor pathologic reflexes, were present. 

An April 2018 VA neurology consult assessment demonstrated a normal neurological examination of the lower extremities. The Veteran uses a cane with his right hand for support due to his low back for the past 3-4 years. In the lower extremities, tone and bulk were normal. There were no abnormal movements. There was 5/5 full strength in the quadriceps, hamstrings, tibiales, and extensor hallucis longus. Deep tendon reflexes were normal, 2+ in the ankles and pattelars. The sensory examination showed symmetrical pinprick perception in the lower extremities. Light touch, vibration, and proprioception were normal. The Veteran’s gait was steady. 

During a May 2018 VA gastroenterology consult, the Veteran denied any weakness in his lower extremities at that time. On examination in May 2018, the following assessments were made for the lower extremities - intact strength, normal sensation, good pulses, no clubbing, and no edema.

In summary, in light of the above evidence, the severity of the Veteran’s consistent pain and sensory disturbances in the lower extremities, with occasional weakness and diminished reflexes in both lower extremities, are adequately reflected by the current separate 10 percent ratings assigned for “mild” radiculopathy under Diagnostic Code 8520 throughout the entire appeal period.

Accordingly, the Board concludes that higher initial disability ratings in excess of 10 percent are not warranted for the Veteran’s right and left lower extremity sciatic nerve radiculopathy. 38 C.F.R. § 4.3. 

With regard to the potential for an extraschedular rating under 38 C.F.R. § 3.321(b)(1), the Board has considered the contention from the Veteran’s attorney that the Veteran is entitled to a higher rating for his lower extremity radiculopathy on an extraschedular basis. See January 2019 attorney brief at page 7. In particular, the Veteran argues he is entitled to an extraschedular rating under 38 C.F.R. § 3.321(b)(1) for his lower extremity radiculopathy because it causes marked interference with employment as to render impractical the application of the Rating Schedule.

However, because the rating criteria for neurological disabilities under 38 C.F.R. §§ 4.120, 4.123, 4.124, and 4.124a reasonably describe the claimant’s disability level and symptomatology for his lower extremity radiculopathy disability, the Veteran’s disability picture is contemplated by the Rating Schedule, such that the assigned 10 percent schedular evaluations are, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111, 115-116 (2008); VAOPGCPREC 6-96. These particular rating criteria for neurological disorders include all the Veteran’s symptomatology – his consistent pain and sensory disturbances in the lower extremities, with occasional weakness and diminished reflexes in both lower extremities. The Veteran also utilizes a cane for his low back and radiculopathy disabilities. As relevant to this fact pattern, the Court in Spellers v. Wilkie, 30 Vet. App. 211 (2018), recently held that the use of a cane or walker is contemplated by the schedular rating criteria relating to sciatica, specifically, in Diagnostic 8520 and the regulations preceding the ratings for neurological disorders, such as 38 C.F.R. § 4.120. The Court added that certain diagnostic codes, such as 8520, that rate based on general terms of mild, moderate, moderately-severe, or severe, by necessity have considered the severity of disability symptoms. Thus, an extraschedular referral under 38 C.F.R. § 3.321(b)(1) for a neurological disability would be redundant, unless a veteran has already received the maximum schedular rating for this type of disability. To the extent a claimant, such as the current Veteran, argues that he is entitled to a higher disability rating on an extraschedular basis for a neurological disability as a result of the “severity” of his condition, per the Spellers case, this “is, fundamentally, an argument for a higher schedular rating.” Id. Therefore, an extraschedular referral under 38 C.F.R. § 3.321(b)(1) is not available for the Veteran’s lower extremity radiculopathy disability, unless the Veteran had already received the maximum schedular rating under Diagnostic Code 8520, which in the present case he has not. 

And although the Veteran’s lower extremity radiculopathy disability interferes with his employment, such interference is contemplated by the 10 percent schedular rating criteria for which he has been granted for each lower extremity. See 38 U.S.C. § 1155; 38 C.F.R. § 4.1. In short, there is no unusual or exceptional disability picture for the Veteran’s lower extremity radiculopathy disability that would render impractical the application of the normal Rating Schedule. 

In the present case, the first threshold step of Thun is not met here, in that the available schedular criteria for the Veteran’s lower extremity radiculopathy are adequate to rate all of the Veteran’s radicular signs and symptoms. Thus, there is no need to consider whether there are “related factors” such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board’s finding that the rating criteria were adequate to evaluate the claimant’s disability was a sufficient basis for denying extra-schedular consideration without regard to whether there was marked interference with employment); Doucette v. Shulkin, 38 Vet. App. 366 (2017) (if Thun element one is not satisfied, the Board does not need to analyze Thun element two). 

In conclusion, the Board finds that referral for an extraschedular evaluation for the Veteran’s service-connected bilateral lower extremity radiculopathy disability on appeal under the provisions of 38 C.F.R. § 3.321(b)(1), is not warranted. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App. 111 (2008).

TDIU - PRIOR TO OCTOBER 6, 2016

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. 38 U.S.C. § 1155 (2012). Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a)(1). Total disability may or may not be permanent. Id. Total ratings are authorized for any disability or combination of disabilities for which the Rating Schedule prescribes a 100 percent evaluation. 38 C.F.R. § 3.340(a)(2). 

A TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. Id. 

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. Id.

Entitlement to a total rating must be based solely on the impact of the Veteran's service-connected disabilities on his ability to keep and maintain substantially gainful employment. See 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is "whether the Veteran's service connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). For VA purposes, the term "unemployability" is synonymous with an inability to secure and follow a substantially gainful occupation. VAOPGPREC 75-91; 57 Fed. Reg. 2317 (1992). 

Consideration may be given to the Veteran's level of education, special training, and previous work experience in arriving at a conclusion. However, individual unemployability must be determined without regard to any nonservice-connected disabilities or the Veteran's advancing age. 38 C.F.R. §§ 3.341(a), 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose, 4 Vet. App. at 363. 

If a veteran fails to meet the threshold minimum percentage standards enunciated in 38 C.F.R. § 4.16(a), rating boards should refer to the Director of Compensation Service for extraschedular consideration all cases where the veteran is unable to secure or follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. § 4.16(b). See also Fanning v. Brown, 4 Vet. App. 225 (1993). 

Thus, the Board must evaluate whether there are circumstances in this Veteran's case, apart from any non-service-connected conditions and advancing age, which would justify a TDIU rating. 38 C.F.R. §§ 3.341(a), 4.16(a), 4.19. See Van Hoose v. Brown, 4 Vet. App. 361 (1993); see also Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). The Veteran’s service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16(b). 

The ability to work sporadically or obtain marginal employment is not substantially gainful employment. 38 C.F.R. § 4.16(a); Moore v. Derwinski, 1 Vet. App. 356, 358 (1991). Marginal employment, i.e., earned annual income that does not exceed the poverty threshold for one person, is not considered substantially gainful employment. 38 C.F.R. § 4.16(a). 

In a claim for TDIU, the ultimate question of whether a veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. See 38 C.F.R. § 4.16(a); see also Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013) (noting that “applicable regulations place responsibility for the ultimate TDIU determination on the [adjudicator], not a medical examiner”); Floore v. Shinseki, 26 Vet. App. 376, 381 (2013) (observing that “medical examiners are responsible for providing a ‘full description of the effects of disability upon the person’s ordinary activity,’ 38 C.F.R. § 4.10 (2013), but it is the rating official who is responsible for ‘interpret[ing] reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present,’ 38 C.F.R. § 4.2 (2013).”). 

When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

From October 6, 2016 to the present, the Veteran has already been awarded a 100 percent TDIU rating. See December 2016 rating decision. 

However, the Board will now consider whether the Veteran is entitled to a TDIU during an earlier period of time from December 5, 2008 (date of initial rating claim) to October 6, 2016, as he has also alleged unemployability during this earlier time period as well. In this regard, the Court recently held that for the issue of entitlement to a TDIU, if TDIU is part and parcel of an initial rating claim (such as in the present case), the entire appeal period beginning with the effective date of the grant of service connection is on appeal for TDIU and must be addressed – the lack of an NOD with the assigned effective date for a partial grant of the TDIU is irrelevant. Harper v. Wilkie, No. 16-3519, 2018 U.S. App. Vet. Claims LEXIS 1618 (Vet. App. December 6, 2018).

As of October 6, 2016, the Veteran is service-connected for the following disabilities: low back IVDS and arthritis and radiculopathy of the lower extremities, rated as 60 percent disabling; depressive disorder, rated as 50 percent disabling; and erectile dysfunction, rated as 0 percent disabling. As of October 6, 2016, the combined service-connected disability rating is 80 percent. See 38 C.F.R. § 4.25 (combined ratings table). Therefore, as of October 6, 2016, the schedular percentage criteria for TDIU are met. 38 C.F.R. § 4.16(a). In fact, the AOJ already granted the Veteran a TDIU as of October 6, 2016.

Based on the Board’s award in the present decision of a higher initial 60 percent rating for IVDS, prior to October 6, 2016, the Veteran is service-connected for the following disability: low back IVDS and arthritis and radiculopathy of the lower extremities, rated as 60 percent disabling for incapacitating episodes. The combined service-connected disability rating is 60 percent. See 38 C.F.R. § 4.25 (combined ratings table). Therefore, prior to October 6, 2016, for the time period on appeal, the schedular percentage criteria for TDIU are met (under the combined rating table). 38 C.F.R. § 4.16(a). 

Consequently, prior to October 6, 2016, the only remaining question is whether the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities. 38 C.F.R. § 4.16(a). 

Upon review, in the present case, effective January 11, 2013, the evidence of record supports the award of a TDIU rating under 38 C.F.R. § 4.16(a). 

With regard to lay evidence in support of a TDIU, the Veteran has credibly reported that he had to leave his full-time employment as an assembly technician for semiconductors at Applied Materials in January 2013, due to the severe impairment caused by his service-connected low back and radiculopathy disabilities. The record confirms the Veteran has not worked since January 2013. He is 61 years old. His education includes one year of college. He has credibly reported he is prevented from performing substantially gainful employment due to the effects of his service-connected low back and radiculopathy disabilities. This is even though for several years prior to January 2013 accommodations were made for the Veteran’s low back disability, and he was allowed to work the less intensive night shift. But over time, he could no longer bend, squat, or walk around as needed. He could not sit or stand for extended periods of time. He could only lift five pounds. His low back pain and radiculopathy caused fatigue and pain. He had to use a cane to get around. His pain medications made him tired on the job. He could no longer perform his work duties to a sufficient standard. He had worked at Applied Materials for over 14 years from March 1997 to January 2013. See May 2010 TDIU application (VA Form 21-8940); January 2019 attorney brief. 

With regard to medical evidence in support of a TDIU, VA and private treatment records dated from 2008 to 2013 document the Veteran’s ability to work at his technician job became more and more difficult. He began to miss a lot of work due to incapacitating episodes from his low back disability. He experienced chronic low back pain, as well as radiculopathy. He was switched to the night shift, but he still missed significant work time. Significantly, a March 2013 SSA Disability Determination and Transmittal concluded the Veteran was disabled and unable to work due to his service-connected low back disability, as of January 11, 2013. SSA disability records and functional capacity assessments by SSA physicians dated in March 2013 document that future improvement in his low back was not expected to occur. SSA disability records dated in March 2013 stated that he cannot stoop to check out the machines at his job due to low back pain. He could not crouch, but his job required him at times to lie down on the floor to make repairs. He was missing too many days from work. He has no other special skills or training. In any event, while the decision by the SSA on a claim before that agency is not controlling with respect to VA’s determination on a claim, the SSA’s determination regarding the Veteran’s unemployability and the reasons for that determination are pertinent for VA purposes. Murincsak v. Derwinski, 2 Vet. App. 363 (1992); Masors v. Derwinski, 2 Vet. App. 181, 187-88 (1992). In this case, the SSA’s disability determination provides strong evidence in support of TDIU entitlement for the Veteran effective from January 11, 2013. 

With regard to medical evidence in support of a TDIU, a November 2015 Independent Medical Examination reflected the Veteran had chronic low back pain and-quit several labor-intensive jobs due to his low back pain. It is because of his low back pain that he is unable to work and have gainful employment. He has severe trouble with all his activities of daily living that require any type of prolonged sitting, standing, bending, stooping, squatting, and kneeling.

The Board finds that all of the above evidence is entitled to significant probative value in support of the Veteran’s claim. In short, there is clear, credible, and probative medical and lay evidence in support of the claim for entitlement to TDIU, effective January 11, 2013, but no earlier. The Veteran cannot function in a work setting involving physical labor, as well as in sedentary employment.

The Board acknowledges that the Veteran appears able to perform certain aspects of daily living on and after January 11, 2013. However, the law recognizes that a person may be too disabled to engage in employment, although he or she is fairly comfortable at home or upon limited activity, such as the Veteran in this case. See 38 C.F.R. § 4.10. A veteran also does not have to prove that he or she is 100 percent unemployable in order to establish an inability to maintain a substantially gainful occupation, as required for a TDIU award. See 38 C.F.R. § 3.340(a); Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001). 

As of January 11, 2013, even without consideration of the effects of his age and nonservice-connected disorders, the evidence of record clearly shows the Veteran’s service-connected disabilities, standing alone, prevent him from securing employment. 38 C.F.R. § 4.16(a), 4.19. See also Blackburn v. Brown, 4 Vet. App. 395, 398 (1993); Van Hoose v. Brown, 4 Vet. App. 361 (1993).

In conclusion, the Board finds that the evidence supports the grant of entitlement to TDIU, effective January 11, 2013, but no earlier. 38 C.F.R. § 4.3. The medical and lay evidence of record establishes that the Veteran’s service-connected low back and radiculopathy disabilities prevent him from securing or following substantially gainful employment beginning on January 11, 2013. 38 C.F.R. § 4.16. Accordingly, the TDIU appeal is granted, effective back to January 11, 2013.

In making this determination, the Board emphasizes that in the present case, the TDIU award is based solely on the effects of the Veteran’s service-connected low back IVDS and closely associated radiculopathy disabilities, as opposed to a combination of his multiple service-connected disabilities including his depressive disorder. See Guerra v. Shinseki, 642 F.3d 1046 (Fed. Cir. 2011); Buie v. Shinseki, 24 Vet. App. 242, 250-51 (2010); Bradley v. Peake, 22 Vet. App. 280, 293 (2008). A TDIU rating based on multiple service-connected disabilities would not satisfy the criteria for one total disability in considering entitlement to housebound benefits under 38 U.S.C. § 1114(s). Bradley, 22 Vet. App. 290-91. Effective January 11, 2013, but at no time prior, it is apparent from the record that the Veteran’s service-connected low back IVDS and closely associated radiculopathy disabilities, standing alone, would prevent him from working. The additional 

 

effects of his subsequently service-connected depressive disorder further adds to his unemployability.

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD P.S. Rubin, Counsel